582 So.2d 403 (1991)
Evelyn HUDSON
v.
Dr. Steve PARVIN.
No. 07-CA-59475.
Supreme Court of Mississippi.
June 5, 1991.
*404 Laurel G. Weir, Thomas L. Booker, Weir & Booker, Philadelphia, for appellant.
Mildred M. Morris, Jackson, for appellee.
Before HAWKINS, P.J., and ROBERTSON and SULLIVAN, JJ.
SULLIVAN, Justice, for the Court:
On February 9, 1982, Evelyn Hudson was a patient at the Winston County Community Hospital. At that time, she was told that it would be unsafe for her to have any more children and that having a tubal ligation would prevent her from doing so. Dr. Parvin came to her room at the hospital that day and asked her if she wanted to have the surgery. According to Hudson, he guaranteed to her that she would not have any more children after the surgery. She agreed to have the surgery the next day.
Dr. Parvin performed the surgery. The evening of the day on which surgery was performed, Dr. Parvin told Hudson that the surgery was successful and that she would not have any more children. He said he had cut, tied and burned (cauterized the ends of) her tubes. Hudson paid Dr. Parvin about fifteen hundred dollars for the operation.
Hudson said that Dr. Parvin did not warn her of the possibilities of the risks or complications. She did not remember that he had ever explained the procedure he was *405 going to use to perform the surgery, but she relied on his guarantee.
Hudson was given a Request and Consent to Sterilization Form at the hospital. She signed the first such form in January of 1982. She said that she glanced through the form before she signed it. The form had Dr. Crawford's name on it but Hudson said she knew that Dr. Parvin was going to perform the surgery. Dr. Crawford had delivered all of Evelyn's children.
Hudson said that she read the part of the form which stated that the possible consequences of the operation are that the tubes grow together resulting in pregnancy. However, Hudson said she did not think anything about that because Dr. Parvin guaranteed that she would not get pregnant.
Included on the form was the statement, "I acknowledge that I have received no guarantees or assurances with respect to the benefits from this surgery." Hudson testified that she read that statement. She said that when she signed the form, none of the blanks were filled in. She signed this form before she had met Dr. Parvin.
Dr. Orglar was originally scheduled to perform the surgery. He made a notation on the hospital records that he had explained the surgery to Hudson. Hudson, on the other hand, said that Dr. Orglar did not talk to her at all. He came into her room once with Dr. Parvin but he did not say anything.
Hudson also signed a Consent to Operate form which had Dr. Orglar's name on it as the surgeon. However, Hudson knew that Dr. Parvin was going to perform the surgery. She said that she had not read this form. It was brought to her by a nurse who laid it on her tray and told her to sign it when she had time. She went to sleep instead of reading it. She said that when she signed it, none of the blanks were filled in.
Sometime in October of 1983, Hudson discovered that she was pregnant after she went to see Dr. Soriano. Upon hearing that, she went to Louisville to see Dr. Parvin. He was out of town, so she saw another doctor. Later, she returned to see Dr. Parvin. Dr. Parvin called and talked to Dr. Crawford, and they recommended that she have an abortion.
Hudson decided to have the baby. The baby was born on April 22, 1984, when only six and a half months old. The baby died after birth. The cost of the funeral was one hundred and twenty-five dollars. During the pregnancy, Hudson lost about six or seven weeks of work. She earned approximately one hundred and eighty-five or ninety dollars a week.
Since the surgery, Hudson has had problems with her right side. She has a constant pain which started before she discovered she was pregnant. She said she had some pain from the operation but it was worse after her child was born. Before the child was born, she had backaches, side aches, and her stomach hurt constantly. On cross-examination, Hudson revealed that she had trouble in her right side with her kidneys. She suffered some pain from those problems. She was told by the doctors that she had some infection in her kidneys and she was put in the hospital for that problem.

PRE-TRIAL ACTIVITY
On October 10, 1985, Evelyn Hudson filed a Complaint in the Circuit Court of Webster County against Dr. Steve Parvin, Dr. D.G. Crawford, Drs. X, Y, and Z, Winston County Community Hospital, and XYZ Corporation alleging that the defendants were negligent in performing a tubal ligation procedure upon her in February of 1982 and that as a direct result thereof, she discovered that she was pregnant on October 26, 1983. She allegedly suffered medical, hospital, doctor and drug bills, loss of wages, severe pain and suffering, and mental damages in the aggregate amount of $500,000.00.
Dr. Parvin filed a Separate Answer and Defenses denying most of the allegations in the Complaint, except that he admitted he performed a tubal ligation on Hudson, and asserting § 15-1-36, the statute of limitations applicable to medical malpractice actions, and § 11-1-59, which says that *406 damages in a medical negligence action should not be specified, as affirmative defenses. On November 15, 1985, Dr. Parvin propounded a set of interrogatories to Hudson.
On December 13, 1985, the court granted summary judgment as to Dr. Crawford in response to a motion which he had filed. The court found that Dr. Crawford was entitled to judgment as a matter of law.
On April 4, 1986, Hudson answered the interrogatories which had been propounded by Dr. Parvin. Dr. Parvin filed a Motion for Summary Judgment on August 25, 1986. Attached to the Motion were an affidavit from Dr. Parvin, consent forms signed by Evelyn Hudson, copies of medical records, and an affidavit from Dr. Earl Stubblefield.
On September 1, 1986, Hudson moved for additional time in which to respond to Dr. Parvin's Motion since her attorneys were busy with other cases and had not had time to prepare a response. On September 22, 1986, Hudson filed a Response denying the allegations in Parvin's Motion and stating that she would supplement her response with an affidavit from a medical expert to show that Parvin had not exercised the standard of care required of physicians under similar circumstances. Attached to the response was an affidavit from Hudson.
Hudson's attorney, W. Howard Gunn, filed a Motion to Withdraw from representing Hudson on October 30, 1986. On November 4, 1986, the court allowed Gunn to withdraw and Laurel Weir and Thomas Booker to represent Hudson.
That same day, Hudson filed a Counter Affidavit explaining that her present attorney had not had time to obtain counter-affidavits from medical doctors and surgeons but if given a reasonable period of time, would be able to do so. She asked the court to overrule Dr. Parvin's Motion for Summary Judgment and enter an order granting a continuance to allow her to obtain counter-affidavits. The court overruled Hudson's Motion.
On November 6, 1986, Hudson moved to dismiss the remaining defendants. She asked the court to dismiss the cause with regard to Drs. X, Y, and Z, the Winston County Community Hospital, and the XYZ Corporation. The court ordered that the cause be dismissed without prejudice as to Drs. X, Y, and Z, the Winston County Community Hospital, and XYZ Corporation.
On November 10, 1986, the court granted Dr. Parvin's Motion for Summary Judgment. Hudson filed a Notice of Appeal to this Court on November 13, 1986, from the judgments granting summary judgment for both Drs. Crawford and Parvin.
Hudson v. Parvin, 511 So.2d 499 (Miss. 1987), was rendered by this Court on August 12, 1987. We affirmed the summary judgment as to Dr. Crawford since he did not participate in the tubal ligation surgery. However, the summary judgment granted in favor of Dr. Parvin was reversed. We felt that fairness dictated that Hudson should have been granted a continuance so that she would have had an opportunity to obtain affidavits from experts. Hudson's new attorney had little time to work towards procuring any affidavits. The case was remanded to the lower court to grant a continuance of limited duration.
On October 13, 1987, Dr. Parvin moved for a continuance. He alleged that trial was set for October 31, 1987, without his consent or knowledge and that his counsel had a conflict on that date. He further alleged that Hudson's counsel had never designated an expert witness and since such expert is necessary for the plaintiff's case, he planned to bring the matter up in a Motion for Summary Judgment. That same day, he filed a Notice of Rehearing on Motion for Summary Judgment.
Hudson responded on October 24, 1987, by filing an Answer to Motion for Summary Judgment. Attached to the Answer was an affidavit from Dr. Michael Todd. The hearing on the summary judgment motion was held on October 28, 1987. At the hearing, Hudson's counsel was asked if he had an expert and he named Dr. Todd as his expert. The court overruled the Motion for Summary Judgment.
On October 29, 1987, Dr. Todd moved to have his affidavit withdrawn. He said that *407 he had told Hudson's attorney, Laurel Weir, the morning of the day of the summary judgment hearing that he wanted to withdraw his affidavit and Weir agreed to withdraw it. Since Dr. Todd did not believe that Weir had withdrawn it, he asked the court to do so.
Weir also filed a Motion asking the court to withdraw Dr. Todd's affidavit. He explained that he had talked to Dr. Todd and there was some doubt as to whether Dr. Todd desired the affidavit be withdrawn. Since Weir was not sure at what point in time Dr. Todd desired to withdraw his affidavit, Weir went ahead and used it because he owed a duty to his client to represent her properly.
On January 8, 1988, Hudson filed an affidavit from Dr. A.P. Soriano in opposition to the summary judgment motion. In the affidavit, Dr. Soriano stated his belief that Dr. Parvin was negligent in performing the surgery and that his performance was below the standard of care required of doctors in Mississippi.
Hudson desired to amend her complaint. On October 28, 1987, she asked for permission to file an amendment. Hudson filed two amendments to the Complaint on January 9, 1988. The first amendment alleged that Dr. Parvin had guaranteed that the surgery would prevent Hudson from ever becoming pregnant again and she relied on that promise. However, because of Dr. Parvin's negligence, she discovered on October 26, 1983, that she was pregnant. She again became pregnant in 1985. The second amendment alleged that Dr. Parvin negligently failed to inform Hudson of all the details of the surgery, the possibilities of success, and the risks involved. If she had known the facts, she would not have had the surgery. By order dated April 8, 1988, the court allowed Hudson's complaint to be amended to include the two additional claims.
Dr. Parvin answered the Amended Complaint on April 12, 1988. He denied the allegations and again asserted as affirmative defenses Sections 15-1-36 and 11-1-59 of the Mississippi Code. Hudson filed an Answer on April 14, 1988, denying the affirmative defenses and asking to amend her complaint by stating that the amount of the lawsuit is for more than $10,000.00, in conformance with § 11-1-59.
On April 13, 1988, the court allowed Dr. Parvin to withdraw his Motion for Summary Judgment since Hudson had retained an expert witness. On April 25, 1988, Hudson updated her responses to interrogatories.
Trial was conducted on April 27, 1988. Before the trial began, the defendant made a number of motions. One of those was a motion to prohibit expert testimony by the experts who were named in the supplemented answers to interrogatories which Dr. Parvin had received only the day before trial. Dr. Parvin's counsel said that although she had received the affidavit from Dr. Soriano in response to the Motion for Summary Judgment, he had never been listed as an expert. The other expert named in the supplemented interrogatories, Dr. Joshi, was not known to the defendant until the day before trial.
Hudson's counsel responded by saying that Dr. Parvin's attorney had known for months that Dr. Soriano would be called as an expert. The court ruled that Dr. Soriano could testify only to the extent indicated in the original responses. In those, Hudson named Dr. Soriano as an expert and said that he would testify "as to my [Hudson's] pregnancy following tubaligation [sic]." He could not testify as to the standard of care. The court said that although the defendant's counsel admitted that she was aware that Dr. Soriano would be called as an expert as of the date she received Dr. Soriano's affidavit, the failure to supplement the interrogatories naming Dr. Soriano as an expert until the day before trial precluded the use of Dr. Soriano. The court also ruled that Dr. Joshi would not be allowed to testify.
Because the court so ruled, Hudson was the only witness to testify in her behalf. At the close of her testimony, the plaintiff rested. The defendant moved for a directed verdict. On May 4, 1988, the court rendered its Final Judgment allowing a directed verdict on the plaintiff's claim that *408 Dr. Parvin guaranteed the results of the surgery because that claim was barred by the statute of limitations. The court also granted a directed verdict on all other claims. Hudson appeals, assigning three errors.

LAW
Hudson appeals from the lower court's grant of a directed verdict. Where a motion for a directed verdict is made in a medical malpractice action, we review the evidence by the same standard as applied by the trial court. Under that standard, we are "required to consider the evidence in a light most favorable to the plaintiff, considering the testimony in behalf of the plaintiff to be true along with all reasonable inferences that may be drawn therefrom, and evidence of contradiction thereof must not be considered." Robinson v. Hawkins, 541 So.2d 1048, 1050 (Miss. 1989) [quoting Ladner v. Campbell, 515 So.2d 882, 887 (Miss. 1987)].

I. DID THE COURT ERR IN DETERMINING THAT THE APPELLANT'S CAUSE OF ACTION ON AN ALLEGED NEGLIGENT GUARANTEE WAS BARRED BY MISS. CODE ANN. § 15-1-36 (1972)?
Hudson discovered she was pregnant on October 26, 1983. She filed her action on October 10, 1985. The statute of limitations in medical malpractice cases is given in Miss. Code Ann. § 15-1-36(1) which reads:
Except as otherwise provided in this section, no claim in tort may be brought against a licensed physician, osteopath, dentist, hospital, nurse, pharmacist, podiatrist, optometrist or chiropractor for injuries or wrongful death arising out of the course of medical, surgical or other professional services unless it is filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered.
The court, at the close of the trial, indicated that both the first and second amendments, which were filed on January 9, 1988, and allowed by the court on April 8, 1988, were subject to a directed verdict because they were filed after the statute of limitations had run. However, in its final judgment, the court granted a directed verdict because of the statute of limitations only on the claim that Dr. Parvin guaranteed the results of surgery.
Hudson contends that the alleged breach of oral guarantee by Dr. Parvin is an action in contract rather than in tort. As such, it should be governed by Miss. Code Ann. § 15-1-29 which provides that an action for breach of contract shall be subject to a three-year statute of limitations. Since Dr. Parvin asserted, as an affirmative defense, that the action was barred by § 15-1-36 and did not affirmatively plead § 15-1-29, any objection that the claim was barred by the statute of limitations was waived and the court should not have granted a directed verdict on this issue.
Rule 15(c) of the Mississippi Rules of Civil Procedure provides that "[w]henever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading." In Parker v. Mississippi Game and Fish Commission, 555 So.2d 725 (Miss. 1989), we said that Rule 15(c) allows a pleading to be amended which would otherwise be time barred because the limitations period had run.
Two tests are used by this Court in determining whether allowing the amendment was proper. The first requires that there be an identity between the two occurrences. In other words, the claim stated in the amendment must arise from the same transaction or occurrence as did the claim in the original complaint. However, "[t]he standard for determining whether amendments qualify under Rule 15(c) is not simply an identity of transaction test; although not expressly mentioned in the rule, the courts also inquire into whether the opposing party has been put on notice regarding the claim or defense raised by the amended pleading." Parker, 555 So.2d at 731 [quoting Wright & Miller, Federal *409 Practice and Procedure: Civil § 1497 at 495 (1971)].
Hudson's original complaint stated a claim based upon negligence in the performance of the tubal ligation surgery. It contained the following allegations:
That defendants entered into a doctor-patient relationship with Evelyn Hudson wherein defendants were to perform a tubal ligation procedure on the plaintiff and defendants were negligent in the performing upon and providing of said medical care to plaintiff and as a direct result, plaintiff suffered medical, hospital, doctor and drug bills, loss of wages, pain and suffering, and mental anguish.
Hudson's first amendment states her claim for breach of an oral guarantee. In it, she alleged:
First Amendment  That Dr. Parvin guaranteed that the surgery he was to perform on the plaintiff would prevent her from ever becoming pregnant again and that she relied on that guarantee and as a result, she took no precautions from becoming pregnant. Furthermore, Dr. Parvin owed her a duty to tell her the truth and to fully inform her as to the operation, but negligently failed to do so resulting in pain and suffering, medical, doctor and hospital expenses, and lost income.
Clearly, the amendment meets the first test. Hudson's claim that Dr. Parvin guaranteed that the surgery would prevent her from ever becoming pregnant and that he negligently failed to inform her about the operation arose out of the tubal ligation surgery as performed by Dr. Parvin. The question then is whether Dr. Parvin was put on notice regarding the claim for breach of guarantee. In the original complaint, Hudson alleged that the defendant was negligent in the performing upon and providing of said medical care (the tubal ligation) to Hudson. The words "in the performing upon and providing of" are certainly sufficient to supply notice to the defendant that Hudson might be contemplating a claim for lack of informed consent.
Whether Dr. Parvin would have been put on notice for a claim of breach of oral guarantee is not as easy to answer. The wording of the original complaint would put Dr. Parvin on notice of any claim in tort arising from the tubal ligation surgery. However, if the claim asserted is one in contract, Dr. Parvin would not have been put on notice.
In Hutchinson v. Smith, 417 So.2d 926 (Miss. 1982), an action was brought against an attorney for legal malpractice. We said that an action for legal malpractice can sound either in contract or in tort.
Where a party has two or more remedies for enforcement of a right, the fact that one remedy is barred by the statute of limitations does not bar the other remedies. However, where a plaintiff elects one of two remedies and such action is barred by the statute of limitations, the plaintiff is bound by his election and cannot thereafter resort to the other remedy for which a different limitation is provided. 53 C.J.S., Limitations of Actions § 7 (1948). 53 C.J.S., Limitations of Actions section 45 (1948), provides:
As a general rule, where a party has two remedies available to him, one of which is by action in contract, and the other by some other action, such as an action in tort, whether the statutes of limitation governing actions on contracts apply will depend on his election as indicated by the form of his action or his allegations and prayer. However, it has also been held that the mere fact that the action is in form one of contract is not controlling, and that the real substance of the action is the determining factor.
Hutchinson, 417 So.2d at 928-929.
We have not specifically addressed the question of whether a medical malpractice action can sound either in contract or in tort. In Walton v. Bourgeois, 512 So.2d 698 (Miss. 1987), the plaintiff brought a medical malpractice action in tort. The action was dismissed. Later, she brought another action alleging breach of contract on the same underlying facts. We held that res judicata barred her second action *410 since a plaintiff must assert all theories of recovery in one action where the plaintiff has a choice. Although we said that "breach of contract was a grounds upon which Walton may have sought recovery in the previous lawsuit," we indicated that nothing in the decision should be taken to mean that there are two theories of recovery in a medical malpractice action in Mississippi. Walton, 512 So.2d at 702.
The language of § 15-1-36 suggests that a medical malpractice action can be brought in contract. That section provides that "no claim in tort may be brought ... unless it is filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered." (Emphasis added).
In Murray v. University of Pennsylvania, 340 Pa.Super. 401, 490 A.2d 839 (1985), the court said that a patient may bring an action in tort and also in contract if the doctor has entered into a contractual relationship with the patient to produce a particular result from the course of treatment. The court said that whether the patient was bringing an action in tort or in contract or in both depended on the nature of the damages sought. If the damages are for personal injuries, the action is one sounding in tort. However, if the damages asked for are "intended to give the injured parties the benefit of their bargain by awarding a sum of money that would, to the extent possible, put them in the same position as they would have been if the contract had been performed," the action is one in contract. Murray, 340 Pa.Super. at 408, 490 A.2d at 843.
The holding in Murray agrees with ours in Hutchinson, supra, where we said that the court must look at the action as a whole to determine if it is sounding in tort or in contract. Here, it is clear that Hudson's action is sounding in tort. She claims that Dr. Parvin guaranteed that she would not become pregnant and that he was negligent in doing so. She asks for damages for personal injuries, including pain and suffering, medical, doctor and hospital expenses, and lost income. Nowhere does she ask for contractual damages. Since her claim sounds in tort, the amendment relates back to the date of the original complaint because it arose out of the same occurrence and Dr. Parvin was put on notice. The claim was not barred by the statute of limitations. The court erred in directing a verdict on that basis.

II. DID THE TRIAL COURT ERR IN DIRECTING A VERDICT AS TO THE APPELLANT'S CLAIM ON THE ALLEGED LACK OF INFORMED CONSENT?
In an action based upon lack of informed consent, the plaintiff must prove, by a preponderance of the evidence, a duty, a breach of that duty, proximate causation, and a resulting injury. Palmer v. Biloxi Regional Medical Center, Inc., 564 So.2d 1346, 1363 (Miss. 1990). We have adopted an objective test to determine what information a physician must disclose to the patient about the medical procedure which is to be performed. The test is based on the patient's need rather than on the standard in the medical profession. Using the objective test, "a physician must disclose those known risks which would be material to a prudent patient in determining whether or not to undergo the suggested treatment." Phillips by and through Phillips v. Hull, 516 So.2d 488, 493 (Miss. 1987) [quoting Reikes v. Martin, 471 So.2d 385, 392 (Miss. 1985)].
An objective test is also used to determine if there is a causal connection between the breach of the duty and the resulting injury. "Under this test the question becomes whether or not a reasonably prudent patient, fully advised of the material known risks, would have consented to the suggested treatment." Reikes v. Martin, 471 So.2d 385, 392 (Miss. 1985).
In Phillips by and through Phillips, supra, the plaintiff had undergone a tubal ligation after which she became pregnant. Among the claims asserted by the plaintiff was a claim based upon the failure to obtain the proper informed consent. The plaintiff claimed that the doctor failed to inform her "about the effectiveness of tubal *411 ligation or the fact that contraceptives would be required to prevent future pregnancies." Phillips, 516 So.2d at 493. The lower court granted summary judgment because the plaintiff failed to offer any affidavits from medical experts to support her allegations. This Court reversed on the issue of informed consent. We said that expert testimony was not needed on informed consent in this particular instance because what transpired between a doctor and his or her patient are matters within the knowledge of laymen.
Whether consent is informed may be a question of whether the information provided by the doctor was adequate. It may also be a question of whether the information was too complex for a patient to understand. Palmer, 564 So.2d at 1363. Lack of informed consent may be based on allegations of incompetency or involuntariness. Id. at 1364.
Documents introduced into evidence containing the signature of the plaintiff and authorizing the medical action taken are a measure of support for the doctor's claim that the consent given was informed even though "the documents do not reveal the specific information disclosed and whether the information was adequate." Palmer, 564 So.2d at 1364. In Phillips by and through Phillips, supra, we said that "in the absence of any documentary evidence substantiating Hull's claim of having obtained Phillips `informed' consent for the operation," Hull was not entitled to summary judgment. 516 So.2d at 494.
Since a directed verdict was granted on the issue of informed consent, we must look at the evidence in the light most favorable to Hudson and consider her testimony to be true. Hudson testified that Dr. Parvin did not warn her of the risks or complications which attend a tubal ligation. Hudson could not remember that he had explained the surgical procedures to her. Hudson's claim of lack of informed consent is based on her contention that Dr. Parvin told her she would never again become pregnant after the surgery and that she relied on his guarantee. In other words, Hudson's claim goes to what actually transpired between Dr. Parvin and her.
At trial, two consent forms were introduced into evidence which contained Hudson's signature. Hudson testified that she signed both forms. The first form was a Request and Consent to Sterilization Form. Hudson said that she glanced through the form. She read the part of the form which stated that the possible consequences of the operation are that sometimes the tubes grow together resulting in pregnancy, but she said she did not think anything about it because Dr. Parvin had guaranteed the surgery. She also read the part which stated that she acknowledged that she had received no guarantees or assurances with respect to the surgery. She indicated that she understood what that meant. She said that Dr. Parvin told her that she would never again become pregnant. He did not tell her that the surgery does not always work. She would not have had the surgery without Dr. Parvin's guarantee.
Dr. Parvin was required to disclose the known risks which would be material to a prudent patient in determining whether or not to undergo a tubal ligation. Clearly, a known risk which should be disclosed in tubal ligation surgery is the fact that the surgery does not necessarily preclude pregnancy. The fact that Hudson said that she read the statement on the consent form that sometimes the tubes grow together resulting in pregnancy and which contained the acknowledgment that she had received no guarantees negate her claim of lack of informed consent. Because of the documentary evidence which was produced at trial and Hudson's testimony about those documents, we uphold the directed verdict on this issue.

III. DID THE TRIAL COURT ERR IN PRECLUDING THE APPELLANT FROM ELICITING TESTIMONY FROM DR. A.P. SORIANO ON THE ISSUE OF APPELLEE'S ALLEGED NEGLIGENCE?
On November 13, 1985, Dr. Parvin propounded a set of interrogatories to Evelyn Hudson. One of the questions, number 13, asked for the names of all persons whom the plaintiff expected to call as expert *412 witnesses along with the subject matter of the expected testimony of those witnesses. Hudson responded to the interrogatories on April 4, 1986. She named Dr. Soriano as her expert and indicated that he "will testify as to my pregnancy following tubaligation [sic]."
The affidavit of Dr. Michael Todd was finally supplied by Hudson on October 24, 1987, in response to Dr. Parvin's Motion for Summary Judgment. Dr. Todd moved to withdraw his affidavit on November 3, 1987. On January 8, 1988, an affidavit by Dr. A.P. Soriano was filed with the court to replace that of Dr. Todd.
Hudson supplemented her interrogatory responses on April 25, 1988. Question # 13, which asked for the names of experts and the expected subject matter of their testimony, was supplemented by the following statement: "Dr. A.P. Soriano, 508 S. Church Ave., Louisville, Miss. 39339, whose affidavit is already on file and has been for months and in the hands of defendant and his Attorneys and adopted as part of this answer." In the update to another question asking about alleged acts of negligence and the testimony to support those allegations, Hudson made the statement, "It is clear that there was negligence in general as will have to be testified to by Dr. Soriano and the other experts, including Dr. Joshi, all of which information and reports are in the hands of defendant and his attorneys."
Trial was conducted on April 27, 1988. During the pre-trial motions, the question of whether Dr. Soriano should be allowed to testify was discussed at some length. At that time, counsel for Dr. Parvin moved that the testimony of Dr. Soriano be excluded because the defendant had received the supplemental responses to the interrogatories only the day before, even though the interrogatories were propounded two and a half years earlier. Hudson's counsel argued that Dr. Soriano should be allowed to testify since the defendant had been in possession of Dr. Soriano's affidavit for some time and was aware that Dr. Soriano would be called as an expert witness. In fact, counsel for Dr. Parvin said that she was told the date Dr. Soriano's affidavit was filed that Dr. Soriano would testify as an expert.
The lower court said that a strict construction of Rule 26(f)(1) of the Mississippi Rules of Civil Procedure required that the interrogatories be seasonably supplemented with that information and failure to do so meant that Dr. Soriano could only testify as to the information given in the first set of answers to the interrogatories. In other words, Dr. Soriano could testify as to Hudson's pregnancy following the tubal ligation but could not testify as to the standard of care. Hudson contends that the court erred in excluding the testimony of Dr. Soriano as to the matters in the affidavit because the supplementation of the interrogatories was simply a matter of bringing the answers up to date in writing as to facts which the defendant's counsel already knew. Moreover, there was no surprise.
Rule 26(f)(1) provides that "a party is under a duty seasonably to supplement his response with respect to any question directly addressed to ... (B) the identity of each person expected to be called as an expert witness at trial, the subject matter on which he is expected to testify, and the substance of his testimony." The party who fails to supplement interrogatories may be subject to sanctions under Rule 37.
We have not established a specific time period prior to trial within which interrogatories must be supplemented so as to be seasonable. We have referred the question to the Supreme Court Advisory Committee to be studied and "[b]y doing so, this Court left intact its prior ruling that such discovery deadline must be a reasonable time before trial." Motorola Communications and Electronics, Inc. v. Wilkerson, 555 So.2d 713, 717 (Miss. 1989).
In Motorola, supplementation made ten days before trial was held to be seasonable. This Court said that the complexity of the expert's testimony is important in determining whether the supplementation was seasonable. The requirement that interrogatories be seasonably supplemented ensures "that a sufficient amount of time is allotted before trial to completely deal with *413 the scope of the planned testimony of an `eleventh hour' expert witness." Motorola, 555 So.2d at 718. Because the trial judge found that the issue upon which the expert was to testify was narrow and could be quickly dealt with, we agreed that ten days was enough to allow the opposing party to deal with the testimony.
In Jones v. Hatchett, 504 So.2d 198 (Miss. 1987), we held that providing only the name of the expert four days before trial was not sufficient to discharge the duty required by Rule 26. "The very purpose of our civil discovery procedures is to prevent such trial by ambush." Jones, 504 So.2d at 201.
We have said Rule 26 should be rigidly enforced. Since that is so,
a party may not refuse to respond to discovery on grounds he already knows of or has access to the information sought. 4 Moore's Federal Practice §§ 26.59, 33.13 (2d ed. 1984). `... [A] distinction should not be drawn between facts within or without the knowledge of the examining party.' Id. at § 26.59, p. 26-182. See also 8 Wright and Miller, Federal Practice and Procedure § 2014 (1970). The identity of [the expert] was discoverable as `any matter ... relevant,' Rule 26(b)(1), Miss.R.Civ.P., notwithstanding equal availability of his identity to [the opposing party].
Harris v. General Host Corp., 503 So.2d 795, 798 (Miss. 1986).
Harris involved the testimony of a doctor who had examined the personal injury plaintiff immediately after the accident had occurred. The defendant, at trial, presented the doctor as a witness. The plaintiff objected since the doctor had not been named as an expert witness by the defendant. The defendant contended that the plaintiff was not prejudiced by the testimony because he knew about the doctor since the doctor was the one who had treated him. We rejected that argument and said that "knowledge of a witness' existence and identity, particularly a medical expert witness, is a far cry from preparedness for cross-examination ... There is nothing in the record before us that suggests [the plaintiff's] counsel had any reason to expect that Dr. Allen would be a witness at trial until the moment [the defendant] called him." Harris, 503 So.2d at 798.
The court below relied particularly on Harris v. General Host Corp., supra, in deciding that Dr. Soriano's testimony should be excluded. However, this case can be distinguished from that. In Harris, we said that nothing in the record suggested that the defendant had any reason to expect that the expert would be called as a witness. Here, Dr. Parvin's counsel, when asked if she were aware that Dr. Soriano might be called as an expert witness, responded that she was told that he would be the expert as of the date Dr. Soriano's affidavit was filed. The trial took place on April 27, 1988. Dr. Soriano's affidavit was filed on January 8, 1988, some three months earlier.
Square D Co. v. Edwards, 419 So.2d 1327 (Miss. 1982), although a pre-Rules case, discussed the purpose for requiring seasonable supplementation. In the interrogatories propounded to the plaintiff, the defendant requested the names of all experts who were expected to give opinion testimony and the substance of the opinions. In response, the plaintiff listed Robert Briggs as an expert and said that the expert's opinion had not been furnished to him or his attorney. Later, the plaintiff supplemented the response with the statement, "`See deposition taken on June 20, 1979.'" Square D Co., 419 So.2d at 1327. At trial, Briggs' testimony included matters which were not given in his deposition.
This Court held that "a party must not only supplement interrogatories to reveal the identity of expert witnesses expected to be called at trial, but must also supplement interrogatories to reveal the substance of the testimony of such experts, if not stated in answers to the original interrogatories." Id. at 1329. Seasonable supplementation thus prevents trial by ambush.
Certainly, the testimony of the expert in Square D violated the purpose behind the requirement of seasonable supplementation. The supplementation to the response referred the defendant to the deposition of *414 the expert. However, the testimony of the expert at trial included matters which had not been given in the deposition. As the Court said, "the question of whether plaintiff was under a duty to supplement his answer to Interrogatory 1-G is squarely before the Court." Id. at 1328.
The present situation differs from that in Square D. The Court in Square D said, "`Discovery of expert opinion must not be allowed to degenerate into a game of evasion.'" Square D Co., 419 So.2d at 1329 [quoting Voegeli v. Lewis, 568 F.2d 89 (8th Cir.1977)]. Here, there was no evasion. Nor was there trial by ambush. Dr. Parvin's attorney said that she knew Dr. Soriano was to be Hudson's expert as of the date she received his affidavit. Admittedly, Hudson is at fault for failing to update her interrogatories earlier. However, since Dr. Parvin's counsel admitted she knew that Dr. Soriano would be Hudson's expert and since she had possession of his affidavit for three months prior to trial, the purpose for the requirement of seasonable supplementation was met.
Dr. Soriano should have been allowed to testify as to the matters contained in his affidavit. In his affidavit, Dr. Soriano stated that after examining the records and Hudson's deposition, he was of the opinion that Dr. Parvin did acts in the performance of the surgery on Hudson which were below the minimum standard of care for physicians in Mississippi. He examined the records of Dr. Joshi which were made when Dr. Joshi performed surgery on Hudson in 1985. Dr. Soriano explained what the proper procedure is in a tubal ligation and compared that with the findings of Dr. Joshi.
The explanation given by Hudson's counsel for failure to supplement was certainly plausible. Clearly, he believed he did not need to supplement the responses because Dr. Parvin's counsel was already aware of the fact that Dr. Soriano would be called as an expert. This testimony was crucial to Hudson's claim of negligence for without an expert to testify as to the standard of care, her claim must fail. Dr. Parvin had three months from the date of the affidavit to take some action in response to Dr. Soriano's testimony. Instead, he did nothing. The failure to allow Dr. Soriano to testify as to the matters in his affidavit is reversible error.
AFFIRMED ON ISSUE OF INFORMED CONSENT; REVERSED AND REMANDED FOR TRIAL ON REMAINING ISSUES.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, PITTMAN, BANKS and McRAE, JJ., concur.