783 So.2d 735 (2000)
Leigh Ann WARREN, Appellant,
v.
SANDOZ PHARMACEUTICALS CORPORATION, Appellee.
No. 98-CA-00088-COA.
Court of Appeals of Mississippi.
August 22, 2000.
Rehearing Denied February 6, 2001.
Certiorari Denied May 3, 2001.
*737 Mark C. Baker, Brandon, John W. Christopher, Ridgeland, Attorneys For Appellant.
Mildred M. Morris, Jackson, Katharine R. Latimer, Joe G. Hollingsworth, Washington, DC, Attorneys For Appellee.
BEFORE McMILLIN, C.J., LEE, AND THOMAS, JJ.
LEE, J., for the Court:
¶ 1. Leigh Ann Warren and her husband Dan Warren filed a complaint against Sandoz Pharmaceuticals Corporation n/k/a Novartis Pharmaceuticals Corporation (Sandoz), the Kroger Company, Paracelsus Women's Hospital, Inc., and William Sutherland, M.D. Immediately prior to trial Dan Warren dismissed his claims. Leigh Ann Warren stated that Dr. Sutherland had prescribed Parlodel, which is manufactured by Sandoz, and was distributed by the Kroger Company and Paracelsus Women's Hospital, and as a result of her consumption of Parlodel she suffered an intra cerebral hemorrhage. Out of all the parties formerly enumerated, only Sandoz and Dr. Sutherland proceeded to trial. During the trial of this matter Dr. Sutherland was dismissed. At the conclusion of the trial, the jury rendered a verdict in favor of Sandoz, thereby, denying Warren any actual, compensatory, or punitive damages. Feeling aggrieved by this judgment, the following is a verbatim statement of the issues presented by Warren: (1) whether the trial court abused its discretion and committed reversible error in denying the plaintiff's motion to compel discovery from the defendant and in denying the plaintiff a new trial based on defendant's discovery abuses, which were discovered after trial, and (2) whether the trial court abused its discretion and committed reversible error in allowing James Martin, M.D. to testify as an expert witness on behalf of Sandoz Pharmaceuticals Corporation, in the absence of having been designated in pre-trial procedures by Sandoz as an expert witness. This Court determines that both of these issues are without merit. Accordingly, we affirm the trial court.

FACTS
¶ 2. In 1993, Leigh Ann Warren was pregnant. Warren's pre-natal care was provided by Dr. Sutherland. Warren delivered her child by cesarean section. Dr. Sutherland was available to assist in the delivery of her child. Shortly after the child's birth, Dr. Sutherland administered the prescription drug Parlodel to suppress Warren's milk lactation. Warren was also given a prescription for Parlodel to be filled upon her discharge from the hospital. Warren was discharged from the hospital, and she filled the prescription for Parlodel the next day. Warren took two Parlodel pills daily for approximately one week. Subsequently, Warren suffered a massive stroke which she alleged in her complaint was caused by the consumption of the drug, Parlodel. While this is a brief background of the facts that initiated this cause of action, the facts that are relevant to the discussion of our issues on appeal are those that pertain to the pre-trial procedures regarding discovery between Warren and Sandoz. The specific facts that are entailed in Warren's alleged discovery abuses by Sandoz will be discussed below as we address each issue.

*738 STANDARD OF REVIEW
¶ 3. The abuse of discretion standard is applied in the granting of a new trial. A trial judge should only grant a new trial, when after employing his sound discretion, he or she is certain that the verdict is contrary to the substantial weight of the evidence. C & C Trucking Co. v. Smith, 612 So.2d 1092, 1099 (Miss. 1992). "A greater quantum of evidence favoring the party against whom the motion is made is necessary for that party to withstand a motion for a new trial as distinguished from a motion for j.n.o.v." Id. (quoting Jesco, Inc. v. Whitehead, 451 So.2d 706, 714-17 (Miss.1984)). On appeal, this Court considers the granting or denial of a new trial by a trial judge under a very limited inquiry. This Court must determine whether the ruling of the trial judge is such that we can fairly identify it as an abuse of discretion. Id.
¶ 4. Applying this standard of review to the trial judge's exercise of discretion requires a substantial amount of discretion and deference-by the Court. Id. "In matters such as these we must always recognize that it is the trial judge who is on the scene. There is no way we could ever become as familiar with the proceedings at trial as the trial judge." Id.
¶ 5. This Court is also limited in reversing a trial court's actions regarding its decisions relating to discovery. The aforementioned standard of review still applies. This Court may only reverse the trial judge's ruling regarding discovery if we find that there has been an abuse of discretion. Harkins v. Paschall, 348 So.2d 1019, 1022 (Miss.1977). Therefore, it is the abuse of discretion standard of review that this Court will apply when addressing the issues of whether the trial judge was in error regarding the denial of the motion to compel, whether the granting of a new trial was merited, and whether there were discovery violations that warranted the imposition of sanctions.

DISCUSSION

I. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN DENYING WARREN'S MOTION TO COMPEL DISCOVERY FROM SANDOZ AND IN DENYING WARREN A NEW TRIAL BASED ON SANDOZ'S DISCOVERY ABUSES, WHICH WERE DISCOVERED AFTER TRIAL.
¶ 6. Warren argues that Sandoz failed to completely respond to interrogatories and requests for production propounded by her; therefore, the trial judge erred when he denied a motion for a new trial and/or sanctions. Initially, Warren had filed a motion to compel requesting the trial court to order Sandoz to produce additional documents in response to Warren's interrogatories and requests for production. In response to Warren's motion to compel the trial judge stated:
Well, if you're asking, though, for any document from Sandoz that might be detrimental to their position and enhance your case that they have produced in any of these 97 lawsuits or any other litigation they've been involved in or any other claims, that's over broad. State courts have not gone to that extreme in discovery yet.
Identifiable documents, things that would be relevant to this case, Mark, certainly you're entitled to. But there has got to be a line somewhere. And I think that your request right now is over broad. You may be asking for the whole hog hoping to get the hindquarter, but I can't make that distinction right now.

*739 If you're asking for every document that Sandoz has ever produced in any litigation, that's too broad. I don't know that a Judge in Arkansas would make the same rulings regarding discovery that I would.
I think you'd be entitled to go back, limit the scope of your inquiry, and take another shot at them. And if we need to extend discovery to do that, I'd be inclined to do it; but I think right now it's over broad.
The record does not reveal that any additional interrogatories or requests for production were served on Sandoz. Indeed, on August 6, 1997, the day the motion to compel was heard by the trial judge, Warren represented that she was ready to proceed to trial which was scheduled to begin on September 15, 1997. The trial began on the aforementioned date without any further motion to compel having been filed. Subsequently, Warren filed a motion for new trial.
¶ 7. On appeal Warren contends, as she did at the motion for a new trial, that after the trial she discovered additional documents which had not been previously produced in response to discovery she had propounded to Sandoz. Warren alleges that a discovery violation is apparent and warrants sanctions and/or a new trial.
¶ 8. On September 12, 1997, three days prior to the beginning of Warren's trial a United States District Court in Alabama had imposed discovery sanctions against Sandoz for its failure to provide requested information in another case. Warren alleges that six hundred boxes of documents were produced in the Alabama litigation. Additionally, Warren attempts to support her argument by relying on an assertion made by an attorney in a consolidated New Jersey litigation where that attorney stated that she had received one hundred and twenty boxes of documents. Warren compares the production of documents in these cases to the sixteen boxes of documents provided by Sandoz for review by her counsel during discovery and contends that because of the major discrepancy in the volume of the documents furnished to her, she was given incomplete responses and information regarding her inquiries relative to Parlodel and its correlation with strokes, seizures, and heart attacks in post-postpartum lactation cases.
¶ 9. Another example of the contended intentional withholding of documents by Sandoz, presented by Warren during the motion for new trial, were two documents that she alleged were relevant to her discovery requests but were not produced by Sandoz prior to trial. These documents were marked as exhibits thirteen and fourteen at the motion for a new trial. Exhibit thirteen was a document from William F. Westlin, M.D., to Dr. Griffith, Elton and Ferris dated April 26, 1984. Exhibit 14 was a document that was dated September 17, 1987 and was also authored by Dr. Westlin. Warren contended that Sandoz had produced these documents in other litigation involving Parlodel and was required to do so in the case at bar.
¶ 10. It is noted by this Court that a hearing for the motion for new trial filed by Warren was initially held on November 4, 1997. However, at this time Warren was not prepared to present her arguments as to the commission of possible errors relative to the alleged failed production of documents by Sandoz. Therefore, the trial judge granted Warren a separate, later hearing on arguments regarding this issue which was held on December 5, 1997. After a hearing was held regarding the resolution of these two discovery issues, an order was entered which held that these assertions were without factual or legal basis and were not well taken. In particular, *740 at the hearing the trial judge stated as follows:
THE COURT: Okay. In the week or two that preceded that on Fridays, and I remember staying here until about 9:00 o' clock or 9:30 one night hearing motions in limine, the Defendant requested that the trial not be held on the 15th. The Plaintiff insisted on it. I ruled for the Plaintiff, and the trial started.
There was no request at that point in time by the Plaintiff to reconsider the motion to compel. And as it's been pointed out on page 18 of the motion hearing that [the previous judge] conducted, he said narrow the scope and we'll take another look at it. That didn't happen.
This Alabama case was going on in 1996. There were motions to compel, orders entered that I've looked at, noting, of course, that there wasn't one order that was entered during or subsequent to the trial of this matter. Those motions and orders were available prior to the trial of this case.
I get down to another area that troubles me in listening to your presentations. Mr. Christopher reports that he goes to Washington and looks through volumes of material, basically. And then its reported that there were eight times as manyas much information in another case or in another state, in New Jersey.
Mr. Christopher states that there was filler paper in some of those boxes. I don't know how much filler paper was in those 120 boxes. I don't know what documents were in the 16 boxes. I don't know what documents were in the 120 boxes. For all I know, it could be the same documents and more filler paper.
For all I know, Mr. Christopher could have picked out documents to be reproduced, left Washington, and all that he requested to be produced may not have been produced. I have no way of knowing that. I don't know if you do or not, Mr. Christopher. It'sI know it's time consuming, but to make sure that you get everything you look at, you've got to just about stand there and make copies of it yourself.
And we all recognize that that's impossible sometimes to do. And as an attorneyyou can't be faulted for not doing something like that. It takes so much time to do it. Documents that you've put intoas Exhibits 13 and 14, for all I know, may have been in those 16 boxes. I have no idea. I didn't look at them. I'm not saying you did overlook them, but they could have been overlooked. I don't know. There is all kinds of possibilities.
I tend to agree with what you say, Mr. Christopher, about what's discoverable in one jurisdiction is probably discoverable in another; and it gets down to whether or not it going to be admissible or not. Now, who get[s] to decide what's discoverable and what's not? Normally it's the court. And the documents are produced and reviewed by the court and a ruling is made.
I didn't have that opportunity. I didn't have an opportunity to rule on the motion to compel. I may have made a different ruling than [the prior judge] did. All that is water under the bridge.
The Texas case is, to me, is of no importance in this case.... You never know what they're (i.e., the jury) going to do on what documents they look at.
If we talk about maybe ifs, maybe if as much information hadn't gone to the jury as it did, they might have changed their mind. Who knows? But the jury has ruled in the case.
And I think that judges make different rulings on different pieces of evidence *741 as to their discoverability. What I feel like may be discoverable in one case, a judge in Arkansas or California or Alabama might say it's not in that case. I think that if you start looking at discoverability and looking at in camera inspections of documents, that you can get a wide variety of results.
I can't say that [the former judge] was manifestly wrong in making the rulings that he made, which is the subject of why we're here today, it appears to me. I can see nothing that would indicate to me that he was manifestly wrong in making that ruling. And I don't think that I can grant a new trial based on the ruling that he made on the discovery issues at this point.
¶ 11. In the above colloquy it is evident that the trial judge felt that the evidence presented was insufficient for establishing discovery misconduct. This Court notes that the trial judge allowed Warren every opportunity to develop her claim of discovery misconduct. This Court finds that the trial judge did not err in relying on the above findings of fact and concluding that no abuse of discretion occurred by the trial judge regarding the motion to compel and no new trial or sanctions should be granted.
¶ 12. Indeed, as noted by the trial judge, the litigation which occurred in Alabama where sanctions were imposed presented a different factual scenario from the case at bar. As noted by the trial judge, prior orders had been entered by the court in the Alabama litigation compelling discovery which were later not complied with by Sandoz. In the case sub judice, there were no prior orders in place to compel discovery. In fact, quite the opposite had occurred. The trial judge presiding over the case at the time of the motion to compel hearing declined to enter an order compelling discovery and instead requested that Warren narrow her requests. Warren declined to narrow said requests and proceeded to trial without a further motion on the matter of production of documents by Sandoz. See Caracci v. International Paper Co., 699 So.2d 546 (¶ 19) (Miss.1997) (stating that when there is a failure to cooperate in discovery, the party who is seeking a complete response should initially take affirmative action in the correct court by seeking an order compelling discovery pursuant to Mississippi Rule of Civil Procedure 37(a)(2)).
¶ 13. Additionally, we decline to hold that the trial judge abused his discretion in coming to the conclusion that the uncertainty of the evidence presented by Warren pertaining to what information was contained in the sixteen boxes in the present case, or the one hundred and twenty and the six hundred boxes of documents in other litigation involving Sandoz were too speculative to grant a new trial or sanctions. This Court also reaches this conclusion relative to whether Sandoz had actually previously produced exhibits thirteen and fourteen to Warren prior to the trial. Therefore, we find this issue to be without merit.

II. WHETHER THE TRIAL COURT ABUSED ITS DISCRETION AND COMMITTED REVERSIBLE ERROR IN ALLOWING JAMES MARTIN, M.D. TO TESTIFY AS AN EXPERT WITNESS ON BEHALF OF SANDOZ PHARMACEUTICALS CORPORATION, IN THE ABSENCE OF HAVING BEEN DESIGNATED IN PRETRIAL PROCEDURES BY SANDOZ AS AN EXPERT WITNESS.
¶ 14. Warren contends that the trial judge erred when he allowed James Martin, M.D., to testify as an expert witness on behalf of Sandoz. Warren concedes that in Sandoz's supplemental response to her expert interrogatory it read that Sandoz *742 "reserves the right to call in its case-in-chief any treating physician, any expert witness listed by plaintiffs and any expert witness listed by any co-defendant, even if such co-defendant is not a party at the time of trial." Warren also acknowledges that Dr. Martin had been designated as an expert witness by a co-defendant, Dr. Sutherland. Nevertheless, Warren argues that this designation, as well as Sandoz's additional supplementation relative to expert witnesses failed to specifically list Dr. Martin as one of its expert witnesses; therefore, Sandoz did not comply with Mississippi Rule of Civil Procedure 26(b)(4), and Dr. Martin's testimony should not have been allowed at trial. Sandoz counters Warren's argument and states that the aforementioned designation was sufficient to allow for it to call Dr. Martin as an expert on its behalf because Dr. Martin had previously been designated by a codefendant, Dr. Sutherland.
¶ 15. In addressing this issue we begin with the basic premise that Mississippi Rule of Civil Procedure 26 is to be strictly interpreted and should be rigidly enforced. Hudson v. Parvin, 582 So.2d 403, 412-13 (Miss.1991). Mississippi Rule of Civil Procedure 26(b)(4) requires a party to identify each person whom they expect to call as an expert witness at trial, and to state the subject matter and substance of their testimony, as well as a summary of the basis for each opinion. Once an expert interrogatory is propounded, the party who is in receipt of the discovery request has a duty to respond.
¶ 16. Mississippi Rule of Civil Procedure 26(f)(1) requires a party to seasonably supplement an interrogatory answer and a failure to do so means that the expert testimony may be stricken. Hudson, 582 So.2d at 412. This Court notes that while we frequently review and rely on federal authority when interpreting state rules of civil procedure, Mississippi takes a different approach from the Federal Rules of Civil Procedure when a party who has propounded discovery desires a more specific answer. Clark v. Viniard By and Through Viniard, 548 So.2d 987, 991 (Miss.1989). The difference between the Federal and Mississippi Rules of Civil Procedure regarding the obtaining of a more specific answer pertains to the necessity of the filing of a motion to compel prior to requesting and receiving sanctions. Federal Rules of Civil Procedure Rule 26(e), addresses a party's duty to supplement expert interrogatory responses and imposes no requirement, express or implied, that a motion to compel precede a court's imposition of sanctions. Alldread v. City of Grenada, 988 F.2d 1425, 1435-36 (5th Cir.1993). Mississippi Rule of Civil Procedure 26(b)(4)(A)(i) is just the opposite. Under this Mississippi rule if an answer to an interrogatory regarding an expert witness who will testify at trial is deemed insufficient by opposing counsel, some means of notice of such insufficiency must be given to the opposing party in order to let them know that additional information is desired. State Highway Comm'n v. Havard, 508 So.2d 1099, 1104 (Miss.1987). Essentially, the court wants to prevent "trial by ambush." See Coltharp v. Carnesale, 733 So.2d 780 (¶¶ 25-27) (Miss.1999). Therefore, under the Mississippi Rule of Civil Procedure when a party receives an evasive or incomplete answer under Mississippi Rule of Civil Procedure 26(b)(4)(A)(i) and 37, the burden once again shifts to the party who has propounded discovery, and they are required to seek relief from the court before sanctions can be imposed.
¶ 17. The Mississippi Supreme Court noted that the distinction between an "evasive and incomplete" answer and absolutely no answer at all has been dissolved by *743 Rule 37(a)(3). Id. at (¶ 18). In Caracci v. International Paper Co., 699 So.2d 546 (¶ 19) (Miss.1997), the Mississippi Supreme Court stated that when there is a failure to cooperate in discovery, the party who is seeking a complete response should initially take affirmative action in the correct court by seeking an order compelling discovery pursuant to Mississippi Rule of Civil Procedure 37(a)(2). Once the trial court has entered an order compelling discovery, if the party who the order was entered against still fails to make or cooperate in discovery, sanctions may be imposed by the trial court pursuant to Mississippi Rule of Civil Procedure 37(b). Id. Mississippi Rule of Civil Procedure 37(e) allows the trial judge flexibility in summarily dealing with discovery violations. Id. at (¶ 20).
¶ 18. Warren cites such cases as Harris v. General Host Corp., 503 So.2d 795, 798 (Miss.1986), and K-Mart Corp. v. Hardy, 735 So.2d 975 (¶¶ 27-35) (Miss.1999), where the Mississippi Supreme Court held that expert testimony and an exhibit had been properly excluded because it had not been disclosed prior to trial. The case at bar is different because Warren had been given notice, albeit vague, of the possibility of Sandoz calling Dr. Martin to testify on its behalf. Therefore, Dr. Martin was not entirely undisclosed like the situations in the cases of Harris and K-Mart, but in the case sub judice an amendment or supplementation was needed. Therefore, as previously mentioned it was imperative for the Warrens to first seek relief from the trial court and have an order entered before seeking sanctions.
¶ 19. In the case at bar, Warren propounded interrogatory number twentyseven which sought information from Sandoz regarding its anticipated expert testimony at trial. As aforementioned, Sandoz responded to interrogatory number twenty-seven by specifically listing individuals and the content of their expected testimony, as well as generally notifying Warren that Sandoz may call anyone listed as an expert by the plaintiff or any co-defendant. The record reflects that Warren filed a motion to compel on July 22, 1997; however, this motion did not contest the sufficiency of Sandoz's answer to their expert interrogatory. On August 4, 1997, Sandoz filed a supplemental response to plaintiff's interrogatory number twentyseven (i.e., expert interrogatory). This response contained the aforementioned language pertaining to Sandoz's general reservation of the right to not only call its listed experts but its intent to also call any physician or experts listed by Warren or any co-defendant. The record shows that approximately three days prior to trial Sandoz supplemented its answer to the expert interrogatory; however, it still did not specifically list Dr. Martin. In light of Caracci, this Court determines that Sandoz's answer to Warren's expert interrogatory was evasive and is equivalent to a total failure to answer. Nevertheless, its blanket designation regarding expert witness testimony shifted the burden on Warren to affirmatively take action for additional information prior to trial.
¶ 20. The trial did not commence until September 15, 1997. This meant that Warren had approximately a month and a half to pursue a motion for additional supplementation. However, absent from the record is the necessary pre-trial motion, alleging that the answer to Warren's expert interrogatory was evasive or incomplete and requesting the trial court to enter an order compelling additional information. Instead, Warren waited until trial to object to the presentation of Dr. Martin as an expert witness on behalf of Sandoz. Therefore, this situation is factually similar to Caracci.
¶ 21. In Caracci, International Paper had long been aware of discovery deficiencies, but failed to present the deficiencies *744 before the trial court until the trial. Caracci, 699 So.2d at (¶ 22). At trial, International Paper requested the court to exclude the expert testimony. Id. The Mississippi Supreme Court held that International Paper was untimely in their objection, and that International Paper was required to request the trial judge to compel Caracci to respond to discovery requests before relief could be granted. Id.
¶ 22. In summary, we determine that under the circumstances in the case at bar, the trial judge did not abuse his discretion in allowing Dr. Martin to testify at trial, and find this issue to be without merit.
¶ 23. THE JUDGMENT OF THE CIRCUIT COURT OF RANKIN COUNTY IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, IRVING, MOORE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR. KING, P.J., CONCURS IN RESULT ONLY.