516 So.2d 488 (1987)
Julie Ann PHILLIPS, a minor, By and Through her mother and next friend, Debra Ann PHILLIPS, Jimmy L. Phillips, et al,
v.
Calvin T. HULL, M.D.
No. 55989.
Supreme Court of Mississippi.
December 2, 1987.
*489 Merrimen M. Watkins, Crystal Springs, James W. Nobles, Jr., Jackson, for appellants.
C.R. Montgomery, Montgomery, Smith-Vaniz & McGraw, Edward Ellington, Jackson, for appellee.
En Banc:

ON PETITION FOR REHEARING
PRATHER, Justice, for the Court:
This medical malpractice case questions whether, in claims for alleged negligently performed surgical procedures and for failure to obtain informed consent, a plaintiff must submit affidavits of medical experts concerning a physician's standard of care to survive a motion for summary judgment.
On March 15, 1983, plaintiffs/appellants, Debra Ann Phillips, her husband Jimmy L. Phillips and daughter Julie Ann Phillips filed suit against Dr. Calvin T. Hull, a gynecologist and obstetrician, and Health Group of Flowood, Mississippi Inc. (Woman's Hospital), alleging that both defendants were guilty of medical malpractice. After a year of discovery, plaintiff's counsel filed answers indicating that no expert witness had been found to testify for plaintiff. Thereafter, both defendants filed motions for summary judgment submitting affidavits of experts stating that both defendants had conformed to the appropriate standards of care in this case. Plaintiffs, in opposition to the summary judgment motion filed affidavits of Debra Ann Phillips, counsel for plaintiff, and medical records pertinent to the care of Debra Ann Phillips. *490 The trial court thereafter granted a motion for summary judgment to defendant Hull and the hospital. Defendant/hospital is not involved in this appeal. Appellants/plaintiffs appeal alleging that: in a medical malpractice case, a non-moving party under a summary judgment motion need not present the affidavit of an expert witness concerning a physician's standard of care in order to survive such motion.

I.
Plaintiffs allege that on January 17, 1980, Debra Ann Phillips gave birth by caesarean section followed by a tubal ligation sexual sterilization operation performed by Calvin T. Hull, M.D. Debra Ann Phillips is diabetic and future pregnancies indicated high risk pregnancy. In interrogatories plaintiff admits she was told about a tubal ligation operation by Dr. Hull's nurse, but alleges that the ordinary procedure requires that Dr. Hull (1) tell her that the tubal ligation was not 100 percent effective and (2) advise her to continue contraceptive measures. Thereafter Debra Ann Phillips became pregnant and gave birth to minor plaintiff Julie Ann Phillips on August 30, 1981. Plaintiffs allege that Julie Ann is abnormal and has cerebral palsy. Adult plaintiffs seek damages for alleged tort liability in the sum of $1,500,000 for failure to properly perform a tubal ligation, failure to provide reasonable medical care during the sexual sterilization operation and pregnancy, failure to advise Debra Ann Phillips of her situation and alternative methods of treatment, and failure to secure the proper informed consent of Debra Ann Phillips for the treatment rendered.
Additionally, the husband seeks damages of loss of consortium. The minor plaintiff Julie Ann alleges that Dr. Hull failed to properly perform the tubal ligation, failed to provide proper treatment during pregnancy and delivery, failed to advise her mother of alternative methods, and failed to secure the proper informed consent of her mother. Minor plaintiff sought damages for alleged tort liability and for breach of warranty in the sum of $3,500,000.
Appellee, Dr. Hull, filed answers denying any negligence or failure to obtain "informed consent". As an affirmative defense, Hull alleged he exercised the degree of skill, care and diligence required of him in his profession. Dr. Hull stated that he informed Phillips that the tubal ligation was not 100 percent effective and that there are occasional failures but that in such event he would take care of Mrs. Phillips free of charge. Dr. Hull claims that records of such consent are on record in the offices of Woman's Hospital, Inc. The patient, Hull claims, was never billed for prenatal care, hospital admissions, a caesarean section, hysterectomy or post-partal care. Defendant Hull also asserts that the records applicable to Julie Ann Phillips reveal no conclusive medical opinion as to her having cerebral palsy or that Julie Ann Phillips has any medical condition or abnormality resulting from the alleged acts or omission on the part of defendant doctor.

II.
The trial court granted summary judgment under M.R.C.P. 56 to the defendant for the failure of the plaintiffs to submit affidavits of medical experts supporting their allegations.
Mississippi Rule of Civil Procedure 56, Summary Judgment provides:
The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.
Rule 56 has been interpreted by this Court beginning with Brown v. Credit Center, Inc., 444 So.2d 358 (Miss. 1983). See also Bourn v. Tomlinson Interests, Inc., 456 So.2d 747 (Miss. 1984); Biggers v. Fox, 456 So.2d 761 (Miss. 1984); Dennis v. Searle, 457 So.2d 941 (Miss. 1984).
In the instant case, the plaintiffs' complaint rests on two causes of action:
*491 (A) That the doctor was negligent in performing the procedures of delivery and sterilization care; and
(B) That the doctor failed to secure the informed consent of the patient notifying her fully about tubal ligation prior to the operative procedure or the need for contraceptive devices thereafter.
The two theories are considered separately.

A.
The first theory of alleged tort liability for medical malpractice is negligent treatment in delivery and in performance of the tubal ligation. To recover under a negligence action, a plaintiff has the burden of proof to show by a preponderance of the evidence that the defendant had a legal duty, that the legal duty was breached by the defendant to conform to the required standard of care, that the defendant's breach proximately caused an injury to the plaintiff, and that damages to plaintiff have resulted. Latham v. Hayes, 495 So.2d 453 (Miss. 1986); Hammond v. Grissom, 470 So.2d 1049 (Miss. 1985).
The legal duty of surgeons in surgical procedures to use reasonable and ordinary care as other surgeons in good standing would ordinarily exercise in like cases under nationally recognized standards has been clearly established. Hall v. Hilbun, 466 So.2d 856 (Miss. 1985), King v. Murphy, 424 So.2d 547 (Miss. 1983). Unless the matter in issue is within the common knowledge of laymen, Mississippi case law demands that "in a medical malpractice action, negligence cannot be established without medical testimony that the defendant failed to use ordinary skill and care." Cole v. Wiggins, 487 So.2d 203, 205 (Miss. 1986); Clayton v. Thompson, 475 So.2d 439, 443 (Miss. 1985); Hall v. Hilbun, 466 So.2d 856 (Miss. 1985); Kilpatrick v. Mississippi Baptist Medical Center, 461 So.2d 765 (Miss. 1984).
In his motion for summary judgment, Dr. Hull presented affidavits of four fellow doctors specializing in obstetrics and gynecology. Each affidavit indicated that the affiant had reviewed the medical records and documents and found that Dr. Hull had bestowed upon the mother, Debra Ann Phillips, and her minor child, that degree of care, skill and diligence practiced by a reasonably careful, skillful, diligent and prudent practitioner in the field of obstetrics and gynecology in Mississippi.
Plaintiffs, however, presented no expert medical testimony in contradiction to support their claim that the defendant, with respect to performance of the operation and delivery, failed in some causally significant respect to conform to the required standard of care. Hammond, supra. Consequently, viewed in the light most favorable to the non-moving party, the plaintiff, regarding the surgical procedures, has failed "to bring forward [any] significant probative evidence demonstrating the existence of [a] triable issue of fact." Brown v. Credit Center, Inc., 444 So.2d 358, 364 (Miss. 1983); Sanders v. State, 485 So.2d 1057 (Miss. 1986).
Therefore, assuming we are in an area not within the common knowledge of laymen, absent expert medical testimony which (a) articulates the duty of care the physician owes to a particular patient under the circumstances, Hall v. Hilbun, 466 So.2d at 870-873, and (b) identifies the particular(s) wherein the physician breached that duty and caused injury to the plaintiff patient, the plaintiff's claim for negligence regarding the surgery must fail. The trial court was proper in dismissing, against all plaintiffs, the cause of action based upon negligent surgical procedures.

B.
Turning now to the second alleged cause of action against Dr. Hull, these plaintiffs charge that the doctor gave insufficient information to the patient to warrant obtaining her informed consent.
A brief history of the development of informed consent is helpful.
The foundation for the consent requirement applicable to medical practitioners is the tort law of assault and battery  the legal doctrine protecting the right of each individual to be touched *492 only when and in the way authorized by that individual. A landmark case on consent cites as the "root premise" of consent law the oft-quoted statement of Justice Cardozo that
Every human being of adult years and sound mind has a right to determine what shall be done with his own body, and a surgeon who performs an operation without his patient's consent commits an assault for which he is liable in damages. Canterbury v. Spence, 464 F.2d 772 (D.C. Cir.1972), quoting Schloendorff v. Society of New York Hosp., 211 N.Y. 125, 105 N.E. 92, 93 (1914).
Medical and surgical procedures that involve touching a patient's person, even the simplest manipulation of a limb, must be properly authorized or the person performing the procedure will be subject to an action for battery. The obvious corollary is that, absent special circumstances, a competent individual has a right to refuse to authorize a procedure, whether the refusal is grounded on doubt that the contemplated procedure will be successful, concern about probable risks or consequences, lack of confidence in the physician recommending the procedure, religious belief, or mere whim.
P. Lasky, 11B Hospital Law Manual; Consent to Medical and Surgical Procedures 1, (1986). See In Re Brown, 478 So.2d 1033, 1040 (Miss. 1985).
A claim that a physician has breached his duty to obtain his patient's informed consent before rendering treatment, particularly surgery, fits the conventional tort mode: duty, breach, causation, and damage.
The duty/breach issue concerns what in medical negligence law is referred to as the standard of care. What information must the physician disclose to the patient concerning the medical procedure to be performed? Two different articulations of this standard  both stated in objective terms  may be found among the several jurisdictions. These have been summarized in the recent case of Hook v. Rothstein, 281 S.C. 541, 316 S.E.2d 690 (App. 1984), as follows:
Presently, there are two major standards. One is the professional medical standard, sometimes referred to as the traditional standard; and the other is the lay standard, sometimes referred to as either the materiality of risk or prudent patient standard. See 61 Am.Jur.2d `Physicians, Surgeons, and Other Healers' §§ 188-189 (1981); 2 D. Louisell & H. Williams, supra, Paragraph 22.05, at 22-12; see also Woolley v. Henderson, 418 A.2d 1123, 1128-29 (Me. 1980).
...
Under the professional standard, the physician is required to disclose those risks which a reasonable medical practitioner of like training would disclose under the same or similar circumstances. See, e.g., Woolley v. Henderson, 418 A.2d at 1129; Thomas v. Berrios, 348 So.2d 905 (Fla.App. 1977). In most cases, the questions of whether and to what extent a physician has a duty to disclose a particular risk are to be determined by expert testimony which establishes the prevailing standard of practice and the physician's departure from that standard. See, e.g., Folger v. Corbett, 118 N.H. 737, 394 A.2d 63, 64 (1978); Bly v. Rhoads, 216 Va. 645, 222 S.E.2d 783, 787 (1976).
On the other hand, under the lay standard the physician's disclosure duty is to be measured by the patient's need for information rather than by the standards of the medical profession. Woolley v. Henderson, 418 A.2d at 1129. Unlike the professional standard, the lay standard does not ordinarily require expert testimony as to medical standards to establish the physician's duty to disclose; rather, it is for the jury to determine whether a reasonable person in the patient's position would have considered the risk significant in making his or her decision.
In Ross v. Hodges, 234 So.2d 905 (Miss. 1970), a case involving alleged negligence in the removal of a bony lesion from the plaintiff's skull, the Court appeared to follow the "professional community" standard. *493 However, recently the Court recognized the objective patient-need standard for informed consent in Reikes v. Martin, 471 So.2d 385 (Miss. 1985) in the context of a challenge to a jury instruction.
Although not referred to by name, this instruction applied the so-called prudent patient or materiality of the risk standard in determining what risks must be revealed to the patient. Under this standard a physician must disclose those known risks which would be material to a prudent patient in determining whether or not to undergo the suggested treatment.
Reikes, 471 So.2d at 392. The Court then went on to discuss other features of the instruction.
Appellant suggests the Court has rejected this prudent patient formulation of the physician's standard of care in two recent cases: Latham v. Hayes, 495 So.2d 453 (Miss. 1986); and Marshall v. The Clinic for Women, P.A., 490 So.2d 861 (Miss. 1986). Not so. As it is the patient who must decide whether to consent to treatment, a physician's duty to inform is appropriately  and objectively  related to reasonable needs of the prudent patient. See Cole v. Wiggins, 487 So.2d 203, 205 (Miss. 1986); See also Hall v. Hilbun, 466 So.2d 856, 872 (Miss. 1985) (rejection of subjective professional standard; physician's duty "must be objectively determined.")
The causation issue has also been discussed in Reikes where the Court held:
To recover under the doctrine of informed consent, as in all negligence cases, there must be a causal connection between the breach of duty by the defendant and the injuries suffered by the plaintiff. Some states have adopted a subjective standard, requiring the plaintiff to testify or otherwise prove that she would not have consented to the proposed treatment if she had been fully informed. See, e.g., Scott v. Bradford, 606 P.2d 554 (Okla. 1979); Wilkinson v. Vesey, 110 R.I. 606, 295 A.2d 676 (1972). A second test, and the one used by the vast majority of the states, is based upon an objective standard. Under this test the question becomes whether or not a reasonably prudent patient, fully advised of the material known risks, would have consented to the suggested treatment.
502 P.2d 11-12.
Reikes, 471 So.2d at 392. We reaffirm this objective test of causation in informed consent cases.
Notwithstanding the standard applied, a set of guidelines, proposed in Lasky's Hospital Law Manual, supra, is helpful to the physician and attorney.
Over the 20-odd years since the term informed consent came into usage in the medicolegal context, courts have been developing, on a case-by-case basis, a list of items requiring disclosure. Stated in simple, generic terms, the list includes:
[1] diagnosis (i.e., the patient's condition or problem)
[2] nature and purpose of the proposed treatment
[3] risks and consequences of the proposed treatment
[4] probability that the proposed treatment will be successful
[5] feasible treatment alternatives
[6] prognosis if the proposed treatment is not given
Obviously, the applicability of each of the items on the list may shift from case to case, depending upon the particular facts. Nevertheless, the list has value as a disclosure checklist for the practitioner as well as a starting point for closer discussion of the several items.
Hospital Law Manual, supra, 38-39.
Applying the facts of the instant case it is the plaintiffs' allegations that the doctor failed to inform her about the effectiveness of tubal ligation or the fact that contraceptives would be required to prevent future pregnancies. Although the plaintiff concedes that information about the operation was provided to her by a nurse, she alleges that the ordinary procedure requires that a doctor explain the operation and its effects. See Hall v. Hilbun, supra at 871. Implying physicians may incur liability for failure to obtain informed consent, where one delegated to *494 obtain such consents falls below objectively ascertained acceptable level of expected care. The doctor defendant denied a failure to inform. Thus, a genuine issue of material fact exists which must be resolved.
The informed consent theory of recovery in this case, however, is different from the alleged negligent surgical procedure theory. No medical expert testimony is needed to prove what communications transpired between doctor and the patient. Hammond v. Grissom, 470 So.2d 1049, 1053 (Miss. 1985).
This Court notes that the facts of this case elicit no consideration about circumstances where a physician is faced with emergency situations requiring extension of consent as addressed in Latham v. Hayes, 495 So.2d 453 (Miss. 1986). (Plaintiff alleged lack of informed consent when nerve was damaged during emergency removal of cholesteatoma discovered during course of surgery to remove ear polyps). Nor does this case concern a doctor's decision to withhold information where full disclosure to a patient would not be medically sound, objectively, and might be legally excusable. Ross v. Hodges at 909. See also, Cobbs v. Grant, 8 Cal.3d 229, 104 Cal. Rptr. 505, 516, 502 P.2d 1, 12 (1972), 69 A.L.R.3rd 1235.
It appears in this case that on plaintiff's informed consent claim there exists a genuine issue of material fact which, on documents presented, renders the claim one improper for disposition via summary judgment. The affidavits of appellant Debra Phillips and appellee Dr. Hull are in direct contradiction and are matters not beyond the purview of a juror. "[M]atters which are within the common knowledge of laymen are exceptions to the rule that expert medical testimony is required." Cole v. Wiggins, 487 So.2d at 206; Trapp v. Cayson, 471 So.2d 375 (Miss. 1985). Hammond v. Grissom, 470 So.2d 1049, 1053 (Miss. 1985);
No form in the record indicates the patient's consent was in fact an informed consent.
The Court is aware that implied consent may be derived from the fact that Debra Ann Phillips did not object to the tubal ligation performed in January 17, 1980. But in the absence of any documentary evidence substantiating Hull's claim of having obtained Phillips "informed" consent for the operation, this Court does not find that "the strength of [the movant's] showing is such that [he] is entitled to summary judgment as a matter of law," Brown v. Credit Center, Inc., 444 So.2d 358 (Miss. 1983), on the issue of informed consent.

III.
Finally, this Court addresses the claim of the minor daughter, Julia Ann, who was conceived after the tubal ligation surgery on her mother. The child's cause of action is based upon two theories, medical practice by the doctor and breach of warranty. The tort liability claimed is based upon the same allegations as that of her mother; that is, that the doctor negligently performed a tubal ligation on her mother resulting in conception of the minor child who was born with cerebral palsy. Additionally, allegations refer to a hospitalization of the mother prior to the child's birth. However, no acts of negligence against either doctor or hospital were alleged in reference. The plaintiff invoked the doctrine of res ipsa loquitur since the defendants were in control of the premises.
These allegations were either duplicative of the mother's alleged claim or were insufficiently pled. The res ipsa loquitur doctrine should be cautiously applied. Latham v. Hayes, supra. A jury may not presume negligence because of unsuccessful results of surgery. Ross at 909.
Additionally, the complaint does not sufficiently develop the breach of warranty theory of recovery, except to state that the defendants warranted safety and care to both mother and daughter and warranted proper delivery of the child. The allegations are insufficient to develop a basis for claims.
In conclusion, the trial court properly granted summary judgment to the defendant doctor on the tort liability claims of the *495 mother, father, and child and his summary judgment should be affirmed in part. The breach of warranty claim of the child was properly dismissed. However, the wife and husband's claim of medical malpractice for lack of informed consent is reversed and remanded to the trial court for further proceedings not inconsistent with this opinion.
AFFIRMED IN PART; REVERSED IN PART AND REMANDED FOR TRIAL.
ROY NOBLE LEE, C.J., HAWKINS, P.J., and ROBERTSON, SULLIVAN, ANDERSON and ZUCCARO, JJ., concur.
DAN M. LEE, P.J., and GRIFFIN, J., concur in the affirmance and dissent as to the reversal.