867 So.2d 271 (2004)
James G. BARTON, Appellant
v.
The ESTATE OF Richard E. BUCKLEY, M.D., Deceased, Appellee.
No. 2003-CA-00376-COA.
Court of Appeals of Mississippi.
March 9, 2004.
*272 Michael A. Boland, attorney for appellant.
Paul J. Delcambre, Gulfport, attorney for appellee.
Before SOUTHWICK, P.J., LEE and CHANDLER, JJ.
LEE, J., for the Court.

PROCEDURAL HISTORY
¶ 1. On December 8, 1993, James Barton filed a medical malpractice action in the Circuit Court of Harrison County, alleging Dr. Richard E. Buckley was negligent and failed to meet the minimum standard of care with regard to informed consent for surgical treatment and in his treatment of the patient post-operatively. Dr. Buckley died on July 21, 1998. An amended complaint adding Memorial Hospital at Gulfport as a defendant was filed on March 6, 1998; however, MHG was dismissed with prejudice on July 6, 2000. Dr. Buckley's estate filed a motion for summary judgment on October 24, 2002. The motion was granted on January 16, 2003, and a final judgment of dismissal was entered on February 26, 2003. Barton now appeals to this Court asserting that the trial court erred in granting the motion for summary judgment in favor of Dr. Buckley's estate.

FACTS
¶ 2. Barton was first seen by Dr. Buckley on October 14, 1988, with complaints of back pain sustained when he fell at work in September of that year. X-rays taken of his lumbar spine revealed mild degenerative changes of the lumbar spine with specific changes of the spine at L5-S1. At that time Dr. Buckley diagnosed Barton with an acute lumbosacral strain.
¶ 3. In October 1991, Barton suffered an on-the-job back injury and went to the emergency room where he was seen by Dr. Buckley. After obtaining a CT scan and an MRI of Barton's lumbar spine, Dr. Buckley noted that they revealed degenerative and hypotrophic facet joint changes at the L4-5 and L5-S1 levels, spinal stenosis, extensive degenerative disc disease with herniations, and evidence of nerve root compressions. Barton was soon discharged and saw Dr. Buckley again on November 6, 1991, for a follow-up consultation. At this consultation a myelogram and post-myelogram CT were performed. The myelogram demonstrated spinal stenosis and possible herniated disc, as well as disc bulges. The post-myelogram CT revealed a posterior bulge of the L3-4 disc, causing a tight spinal canal, a focal herniation of the L4-5 disc on the right with spinal stenosis and a posterior bulge protrusion of the L5-S1 disc.
¶ 4. At a later visit on November 27, 1991, Dr. Buckley showed the results to Barton and recommended surgery. Dr. Buckley described the surgery and informed Barton of certain risks associated with the surgery. Barton was admitted to MHG on December 12, 1991, and signed a form consenting to the surgery and acknowledging that the risks of surgery had been explained to him by Dr. Buckley. Dr. Buckley performed a total laminectomy with bilateral foraminotomy at L3-4 and L4-5 with exploration of the L3-4 and L4-5 disc spaces. After the operation an epidural hematoma formed at the surgery site causing a build up of pressure upon Barton's spinal cord and nerves. When the presence of the hematoma was confirmed, Dr. Buckley removed the hematoma. Barton suffered some nerve damage as a result of the hematoma, which manifested *273 itself as a neurogenic bladder, impotence, and incontinence, as well as weakness of his lower extremities.

DISCUSSION OF ISSUE
I. DID THE TRIAL COURT ERR IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DR. BUCKLEY'S ESTATE?
¶ 5. In his only issue, Barton contends that the trial court erred in granting summary judgment in favor of Dr. Buckley's estate. Specifically, Barton claims that there was a factual dispute concerning whether Dr. Buckley gave any warnings at all and whether Dr. Buckley's warnings, if any, met the applicable standard of care. In reviewing a grant of summary judgment, this Court employs a de novo standard. If the pleadings, depositions, answers to interrogatories and admissions, together with any affidavits, show there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law and summary judgment should be entered for the movant. Boyles v. Schlumberger Technology Corp., 832 So.2d 503(¶ 5) (Miss.2002).
¶ 6. When an individual claims that a physician has breached the duty to obtain the patient's informed consent the familiar tort elements apply: duty, breach, causation, and damage. Phillips By and Through Phillips v. Hull, 516 So.2d 488, 492 (Miss.1987). If there is a physician-patient relationship, the doctor automatically has the duty to inform and procure the consent of the patient as it relates to the proposed treatment. Palmer v. Biloxi Reg'l Med. Ctr., Inc., 564 So.2d 1346, 1363 (Miss.1990). However, in proving a breach of this duty, the patient must make more than mere allegations to substantiate that the physician did not obtain informed consent. Id. See also Hill v. Warden, 796 So.2d 276 (Miss.Ct.App.2001). Once proof of duty and breach of that duty is provided, the plaintiff is required to produce evidence of two sub-elements of causation. First, the plaintiff must show that a reasonable patient would have withheld consent had he been properly informed of the risks, alternatives, and so forth. Phillips v. Hull, 516 So.2d 488, 493 (Miss.1987). And second, the plaintiff must show that the treatment was the proximate cause of the worsened condition. That is, the plaintiff must show that he would have not been injured had the appropriate standard of care been exercised. Id.
¶ 7. Although Barton claims that Dr. Buckley did not inform him of the risks of surgery, Barton signed a consent to operation form which authorized Dr. Buckley to perform a decompression lumbar laminectomy. The form also stated that the procedure was explained to Barton by Dr. Buckley and that the "nature and consequences of the procedure" were explained as well. According to Palmer, this document can constitute some evidence that informed consent was obtained. Palmer, 564 So.2d at 1364. In Phillips, the supreme court reversed on the issue of informed consent because there was no record of any form which indicated that the patient's consent was in fact an informed consent. Phillips, 516 So.2d at 494. Furthermore, the court stated, "In the absence of any documentary evidence substantiating [the physician's] claim of having obtained [the patient's] `informed' consent for the operation, this Court does not find that `the strength of [the movant's] showing is such that [he] is entitled to summary judgment as a matter of law.'" Id. (citation omitted). Pursuant to Palmer, we find that Barton's allegation of lack of informed consent is insufficient rebuttal in light of Dr. Buckley's introduction of the form indicating that Barton's informed consent was obtained.
*274 ¶ 8. Even though Barton denies any warning of the risks of surgery, he argues that if a warning of the risks was given prior to his surgery, then it was inadequate and failed to meet the standard of care. Barton contends that had he known of certain specific risks, such as neurogenic bladder, impotence, and incontinence, then he would not have undergone the surgery. However, Barton fails to show that a reasonable patient, once informed of the risks, would have withheld consent, only that he would have withheld his consent. Barton's own expert witness, Dr. Jarrott, testified that "I don't think it would be reasonable to expect the average patient to refuse surgery solely on the basis of a risk of neurogenic bladder." Furthermore, Barton produced no evidence of the appropriate standard of care at the time of the surgery. Dr. Jarrott testified that, although discussing specific risks of the surgery is a component of the standard of care at the present time, it was probably not required in Mississippi as early as December 1991. Dr. Jarrott stated that the informed consent was not expanded to include specific discussion of neurogenic bladder and other nerve damage until after the facts arose in the case sub judice.
¶ 9. Both Dr. Jarrott and Buckley's expert witness, Dr. Bazzone, testified that, if left untreated, Barton's spinal stenosis would have progressed to the point that Barton would probably have the same condition today if he had not had the surgery. Dr. Bazzone said if Barton had not undergone surgery at that time, then, "to a reasonable degree of medical certainty, he would at least be paraparetic and perhaps paraplegic."
¶ 10. We cannot find that Barton produced the evidence to establish that Dr. Buckley breached his duty or failed to exercise the appropriate standard of care. Barton has failed to raise a genuine issue of material fact and, therefore, we find that the trial court did not err in granting the motion for summary judgment.
¶ 11. THE JUDGMENT OF THE HARRISON COUNTY CIRCUIT COURT IS AFFIRMED. COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, THOMAS, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.