906 So.2d 10 (2004)
Bennie Scott WHITTINGTON and Tina S. Whittington, Appellants
v.
Woodie L. MASON, M.D. and Hinds Urology Clinic, P.A., Appellees.
No. 2003-CA-00700-COA.
Court of Appeals of Mississippi.
September 28, 2004.
Rehearing Denied November 30, 2004.
*12 Douglas G. Mercier, Willie T. Abston, Jackson, attorneys for appellants.
George Quinn Evans, Lynda Clower Carter, Jackson, attorneys for appellees.
EN BANC.
LEE, P.J., for the Court.

FACTS
¶ 1. On May 19, 1998, Bennie Scott Whittington and his wife, Tina, parents of six children, visited Dr. Mason at the Hinds Urology Clinic, P.A. to discuss a vasectomy. Mason's employee, Ms. Thomas, escorted the couple to a room in which they viewed a videotape informing the couple about the procedure. At the conclusion of the tape, Ms. Thomas returned and presented the couple with a consent form. Ms. Thomas left the couple to review the consent form in private. No one from the clinic reviewed the consent form with either of the Whittingtons. Later, Tina testified that she signed the form, which states that the couple had been informed of alternatives and complications, because the videotape had given the couple information and advice about the vasectomy. That same day Mason met with Tina and Bennie to discuss the procedure. Dr. Mason advised the couple that a vasectomy is a simple procedure and that Bennie would be able to return to his job as a mechanic within seventy-two hours of the surgery. Mason confirmed that both Tina and Bennie had viewed the video, and Mason asked them if they had any questions. After the visit, the Whittingtons scheduled an appointment for a vasectomy on May 28, 1998.
¶ 2. Dr. Mason performed the vasectomy as scheduled on May 28, and Bennie was released that same day. An hour after returning home, Bennie complained of severe pain and swelling. Tina called Dr. Mason, and at the doctor's instruction they returned to the clinic after business hours that same day. Dr. Mason advised Bennie to stay off his feet for the remainder of the day. Bennie returned to Dr. Mason on June 2 and June 8 due to his pain. While Bennie was at work on July 9, he experienced severe pain in his scrotal area and began bleeding. He again called Dr. Mason, who diagnosed a tear in the scrotal area. Dr. Mason recommended a second operation to remove a granuloma from Bennie's scrotum. After the operation on July 15, Bennie was unable to return to work for three to four weeks, and he continued to experience severe pain. Bennie returned to the clinic on July 24, and Dr. Mason told Bennie that the pain would subside and released Bennie to return to work on August 3.
¶ 3. Bennie sought a second opinion from Dr. Shingleton, who removed another granuloma at the end of August. For three to six weeks after the surgery Bennie experienced pain, swelling, bruising and drainage. He continued seeing Dr. Shingleton until November 30. On January 29, 1999, Bennie sought assistance from Dr. Fraser. Dr. Fraser gave Bennie a scrotal injection to relieve pain, however the pain returned. Dr. Fraser then referred Bennie to a pain clinic. After these treatments did not alleviate Bennie's discomfort, Dr. Fraser performed an orchiectomy, removing Bennie's right testicle. Dr. Fraser released Bennie to return to work on June 14, 1999.

PROCEDURAL HISTORY
¶ 4. Bennie and Tina filed suit in Hinds County against Dr. Mason and the Hinds County Urology Clinic, P.A. claiming that Mason and the Clinic breached their contract and failed to provide the proper standard of care in performing the vasectomy. *13 Tina and Bennie further alleged that the defendants maimed, assaulted and battered Bennie in their attempts to repair the vasectomy. Bennie and Tina further alleged that the Clinic and Dr. Mason performed surgical procedures on him without his informed consent.
¶ 5. Mason and the Clinic moved for summary judgment. The trial court entered an agreed order of partial summary judgment, dismissing all claims of negligence, but leaving the informed consent claim. Before the jury was seated, the Whittingtons filed a motion in limine seeking to exclude the expert testimony of Dr. Weems. The court denied the motion, stating that the determination of the known risks and whether or not the known risks are material risks lay within the determination of an expert medical witness and not within the abilities of a lay person. The court further held that expert medical testimony was necessary to determine the type of information that should be furnished to a patient regarding the known risks of a procedure. The court also determined that it would be improper to allow a lay person to testify as to what they should have been told because a lay person is not a doctor.
¶ 6. A trial on the merits of the case was heard before Judge Yerger from September 16 to 18, 2002. At the close of the Whittingtons' case, Dr. Mason and the Clinic moved for a directed verdict, and the court took the motion under advisement. The motion for a directed verdict was renewed at the close of the defendants' case, and Judge Yerger informed the parties that he had reservations about whether or not the case should go to the jury because of his opinion that the law required expert testimony concerning the material risks of a vasectomy. The jury was unable to reach a verdict, and the court entered an order of mistrial on September 30, 2002. On September 25, Mason and the Clinic filed a motion for judgment pursuant to Mississippi Rules of Civil Procedure Rule 50(b), requesting that the court rule on their motion for a directed verdict and enter judgment in favor of Mason and the Clinic. A final judgment was entered on the clerk's docket on December 4, 2002. On December 16 the Whittingtons filed a motion for a new trial, to vacate or set aside the judgment, and to amend and reconsider the order and judgment. The court denied the motion on February 20, 2003. The Whittingtons subsequently filed their appeal, citing two assignments of error: (1) whether the trial court erred in granting Mason's and the Clinic's motion for a directed verdict; and (2) whether the trial court erred in denying the Whittingtons' motion in limine.

STANDARD OF REVIEW
¶ 7. On appeal, this Court reviews de novo motions for directed verdict. When deciding whether the granting of a motion for directed verdict was proper by the lower court, we consider the evidence in the light most favorable to the non-moving party and give that party the benefit of all favorable inferences that may be reasonably drawn from the evidence presented at trial. Sperry-New Holland, a Div. of Sperry Corp. v. Prestage, 617 So.2d 248, 252 (Miss.1993). If the favorable inferences have been reasonably drawn in favor of the non-moving party so as to create a question of fact from which reasonable minds could differ, then the motion for directed verdict should not be granted and the matter should be given to the jury. Id.; Pace v. Financial Sec. Life of Mississippi, 608 So.2d 1135, 1138 (Miss.1992).
¶ 8. This Court uses an abuse of discretion standard regarding the admission or the exclusion of evidence. Thompson Mach. Commerce Corp. v. Wallace, 687 *14 So.2d 149, 152 (Miss.1997). The trial court does not abuse its discretion in granting a motion in limine if he determines that: (1) the material or evidence in question will be inadmissible at a trial under the rules of evidence; and (2) the mere offer, reference, or statements made during trial concerning the material will tend to prejudice the jury. Whittley v. City of Meridian, 530 So.2d 1341, 1344 (Miss.1988).

DISCUSSION OF ISSUES

I. DID THE TRIAL COURT ERR IN GRANTING MASON'S AND THE CLINIC'S MOTION FOR A DIRECTED VERDICT?
¶ 9. The familiar elements of a tort apply when a person claims that a physician has breached the duty to obtain the patient's informed consent, namely: duty, breach, causation, and damage. Phillips By and Through Phillips v. Hull, 516 So.2d 488, 492 (Miss.1987). If there is a physician-patient relationship, the doctor automatically has the duty to inform the patient and procure the patient's consent as it relates to the proposed treatment. Palmer v. Biloxi Reg'l Med. Ctr., Inc., 564 So.2d 1346, 1363 (Miss.1990). However, in proving a breach of this duty, the patient must make more than mere allegations to substantiate that the physician did not obtain informed consent. Id. See also Hill v. Warden, 796 So.2d 276 (Miss.Ct.App.2001). Once proof of duty and breach of that duty is provided, the plaintiff is required to produce evidence of two sub-elements of causation. First, the plaintiff must show that a reasonable patient would have withheld consent had he been properly informed of the risks, alternatives, and so forth. Phillips v. Hull, 516 So.2d 488, 493 (Miss.1987). And second, the plaintiff must show that the treatment was the proximate cause of the worsened condition. That is, the plaintiff must show that he would have not been injured had the appropriate standard of care been exercised. Id.
¶ 10. In the case sub judice, the Whittingtons argue that Dr. Mason did not provide adequate information regarding the effects of the surgery. The Whittingtons argue that had Bennie been informed that he could lose a testicle, miss a substantial amount of time at work, and suffer such severe pain, he would not have consented to the surgery. The adequacy of the information supplied by a doctor to a patient may be considered within the context of an informed consent case. Our supreme court has held that "whether consent by a patient to a medical procedure is informed may turn on whether the information provided by the doctor was adequate." Hudson v. Parvin, 582 So.2d 403, 411 (Miss.1991). This state has adopted an objective test to determine what information the doctor must disclose to the patient about the contemplated medical procedure to be performed. Phillips, 516 So.2d at 493 (citing Reikes v. Martin, 471 So.2d 385, 392 (Miss.1985)). The test dictates that a physician "must disclose those known risks which would be material to a prudent patient in determining whether or not to undergo the suggested treatment." Phillips, 516 So.2d at 493. Dr. Mason and the Clinic urge that this test necessarily requires the consideration of expert testimony to differentiate between which risks are known and which risks are merely speculative. This Court agrees with this assertion. Expert testimony is necessary to determine whether or not the loss of a testicle is a known risk in a procedure such as a vasectomy. Unfortunately, Bennie's loss and suffering clearly would not have occurred but for the original surgery, however without expert testimony to delineate that the loss was a "known risk" this Court cannot leap to the conclusion that Dr. Mason *15 was under a duty to inform the Whittingtons accordingly.
¶ 11. Dr. Mason testified as follows regarding the known risks of a vasectomy: (1) one out of 3,200 vasectomies fail; (2) bleeding is a risk associated with vasectomies; (3) infection is a risk associated with vasectomies; (4) pain is a risk associated with vasectomies; (5) the development of sperm granuloma is a risk associated with vasectomies; (6) one out of every 10,000 vasectomies result in chronic pain, which is defined as pain for more than six months; (7) in his professional experience he had never heard of a chronic pain necessitating an orchiectomy; (8) the rare instance in which surgery is required after the vasectomy is due to the fact that sperm leaked out from where the vas has been sealed, "[a]nd so one goes in and cuts the vas below that and above it and essentially removes that section and redoes the vas;" (9) the scrotum is "notorious for swelling" because it is meant to enlarge and contract and lacks the elastic tissue that is present in the skin so "a little bit of operating and pulling and cutting and putting sutures there will cause it to swell some every time;" and (10) 99.9 percent of sperm granuolas dissolve after time.
¶ 12. Dr. Weems testified regarding the risks of a vasectomy as follows: (1) infection is a risk of a vasectomy; (2) bleeding is a risk of a vasectomy; (3) pain is a risk of vasectomy  "[s]ome patients sail through an operation with very little discomfort, and others have to have a lot of pain medicine with the same procedure;" (4) the inability to continue to have children is the primary concern of a vasectomy because "it's not reliably reversible;" (5) there are different theories regarding residual pain after a vasectomy  some doctors attribute the pain to sperm granuolas, while other doctors attribute pain to the scarring process or because of swelling in the tissue; and (6) the possibility of undergoing an orchiectomy to resolve chronic pain after a vasectomy is not a material risk.
¶ 13. Dr. Fraser's testimony detailed how he treated Bennie and why Bennie underwent the orchiectomy. Dr. Fraser's testimony did not discuss whether the potential removal of the testicle was a known risk associated with a vasectomy.
¶ 14. After carefully reviewing the testimony of Drs. Fraser, Mason and Weems in a light most favorable to the Whittingtons, it is clear that no question of fact existed concerning whether an orchiectomy is a known risk of undergoing a vasectomy. There was no testimony to contradict the assertions made by Dr. Mason and Dr. Weems that removing a testicle is not a known risk faced by patients who choose to have a vasectomy. Because the Whittingtons failed to present evidence that Bennie's experience was a risk that was legitimately known to exist, the Whittingtons did not show that information given to them by Dr. Mason was inadequate. The test utilized in this state requires that a physician "must disclose those known risks which would be material to a prudent patient in determining whether or not to undergo the suggested treatment." Phillips, 516 So.2d at 493. While the Whittingtons have clearly shown that Bennie considered his loss a known risk of the surgery, they have yet to show that the medical community views an orchiectomy as a known risk of a vasectomy. It is true that both Bennie and Tina signed a form entitled "Request and Consent for Sterilization." In Mississippi, merely signing a consent form is not a guarantee of the patient's informed consent. Barner v. Gorman, 605 So.2d 805, 808 (Miss.1992). From the testimonies of Bennie and Tina it is clear to the Court that Dr. Mason did not inform the couple that Bennie could *16 possibly suffer such a loss. However, what is clearly lacking from the Whittingtons' case is some evidence that shows that the potential amputation was a known risk of the surgery. Accordingly, we find that the trial court did not err in granting a directed verdict for Dr. Mason and the Hinds Urology Clinic.

II. DID THE TRIAL COURT ERR IN DENYING THE WHITTINGTONS' MOTION IN LIMINE?
¶ 15. The Whittingtons next argue that the trial court erred in allowing Dr. Weems to testify regarding the standard of care in an informed consent case. The trial court denied the motion and Dr. Weems testified that, in his expert medical opinion, Dr. Mason had complied with the standard of care required of urologists in providing information to the Whittingtons. The supreme court has held that the test for informed consent is not what the medical standard is, but rather what the patient needs to be informed. Herrington v. Spell, 692 So.2d 93, 98 (Miss.1997). We must consider whether or not there arose a duty to inform based on the patient's needs, rather than on the applicable standards of care in the medical profession. Dr. Weems' testimony is more relevant for the purposes of the "professional" standard of care which the supreme court has rejected than for the "objective patient-need" standard which this Court follows. Reikes, 471 So.2d at 392. That being said, we still cannot say that the trial judge abused his discretion in allowing Dr. Weems to testify. At best this error was harmless, for, as discussed in section I, the Whittingtons failed to substantiate their claims that injuries such as Bennie's were known risks of a vasectomy.
¶ 16. THE JUDGMENT OF THE HINDS COUNTY CIRCUIT COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
KING, C.J., BRIDGES, P.J., IRVING, MYERS AND CHANDLER, JJ., CONCUR. GRIFFIS, BARNES AND ISHEE, JJ., NOT PARTICIPATING.