909 So.2d 174 (2005)
ALFA MUTUAL INSURANCE COMPANY as Subrogee of Belinda Patterson, and Belinda Patterson, Individually, Appellant
v.
Glenda CASCIO, Appellee.
No. 2004-CA-00508-COA.
Court of Appeals of Mississippi.
August 23, 2005.
*176 J. Paul Clinton, attorney for appellant.
Shawn M. Lowrey, attorney for appellee.
Before KING, C.J., MYERS and ISHEE, JJ.
MYERS, J., for the Court.
¶ 1. On February 6, 2002, Alfa Insurance, as subrogee of Belinda Patterson, ("Alfa") brought a subrogation suit against Glenda Cascio. On April 11, 2003, after Alfa's case-in-chief, the County Court of Forrest County granted Cascio's motion to dismiss and directed a verdict in favor of Cascio. Alfa appealed that judgment to the Circuit Court of Forrest County, which affirmed the judgment of the county court.
¶ 2. Aggrieved by the judgment of the circuit and county courts, Alfa now appeals, raising the following issues:
I. WHETHER THE TRIAL COURT ERRED IN GRANTING THE DEFENDANT'S MOTION FOR DIRECTED VERDICT?
II. WHETHER THE PRESENCE OF THE DEFENDANT AT THE TRIAL ON THE MERITS WAS REQUIRED IN THE ABSENCE OF A SUBPOENA OR COURT ORDER?
III. WHETHER THE TRIAL COURT ERRED IN DENYING THE PLAINTIFF'S MOTION FOR DIRECTED VERDICT?
¶ 3. Finding reversible error, we reverse and remand in part, and affirm in part the trial court's judgment.

FACTS
¶ 4. On December 24, 2002, Patterson was involved in a rear-end collision. She suffered personal injuries and damage to her vehicle, for which her insurance company, Alfa, reimbursed her. Alfa, as subrogee of Patterson, sought to obtain a judgment against Glenda Cascio, the party alleged to be at fault in the accident. At the trial on the merits in the county court, an Alfa representative and Belinda Patterson were both present. When the proceedings commenced, the trial judge asked counsel for Cascio if he intended to call any witnesses. Counsel for Cascio responded that he might possibly call his client, Cascio, as a witness but that she was not present. Alfa objected to the absence of Cascio from the proceedings and moved for a default judgment or a judgment in the nature of a directed verdict for the plaintiff, since the defendant would not be present to put on any evidence. The court, not finding there to be any strict requirement of the defendant's presence in the absence of a subpoena, denied these motions and proceeded with the trial. Alfa renewed these motions periodically during the trial, but the court continued to deny them.
*177 ¶ 5. This particular case was, basically, a run-of-the-mill subrogation case; thus, Alfa came prepared with certain standard documents, in addition to the testimony of its representative and its insured, Patterson. Among those documents were copies of checks demonstrating Alfa's payments to Patterson, an Agreement, Assignment and Release, a Mississippi Uninsured Motorist Release and Subrogation Agreement, and various bills detailing expenses incurred by Patterson as a result of the car accident. The trial court excluded all of this documentary evidence citing, most often, Rules 403 and 901 of the Mississippi Rules of Evidence. The trial court also excluded the medical bills, declaring that they had not been "authenticated" pursuant to Mississippi Code Annotated § 41-9-119 (Rev.2001). The trial court also excluded any testimony regarding the amount of money Alfa paid to Patterson. The trial court did allow into evidence a photograph of Patterson's vehicle, showing the damage to the rear of her vehicle, and the trial court allowed Patterson to testify that her deductible was $200.
¶ 6. The trial court also allowed Patterson to testify to the particulars of the accident and how it occurred. In this regard, Patterson testified that, as she was slowing to turn, with her turn signal on, she was rear-ended by the driver of the other vehicle and that the driver of the other vehicle was talking on a cell phone at the time the accident occurred.
¶ 7. After having excluded all of Alfa's documentary evidence and much of the testimony of Alfa's witnesses, the trial court granted a directed verdict for Cascio. The primary reason given was that Alfa had failed to put on any proof of liability.

LEGAL ANALYSIS
¶ 8. Before proceeding to our discussion, we should note that we have re-cast the issues from their original form in Alfa's brief. Alfa's brief actually states numerous issues and sub-issues; however, upon reviewing the briefs and the record, we find that all of those various issues stated by Alfa are functions of these three basic issues. Thus, we will discuss the issues accordingly, addressing many of Alfa's sub-issues as they are, more properly, arguments in support of these three most basic issues in the case.

I. WHETHER THE TRIAL COURT ERRED IN GRANTING THE DEFENDANT'S MOTION FOR DIRECTED VERDICT?
¶ 9. Alfa advances a number of arguments in support of this issue. The two most relevant arguments are the following: (1) the circuit court, in reviewing the decision of the county court, applied an incorrect standard of review, and (2) at the trial, Alfa put on uncontradicted evidence of liability that should have precluded a directed verdict in favor of Cascio.
¶ 10. Cascio concedes that the circuit court applied an incorrect standard of review, but maintains that the circuit court, nonetheless, properly reviewed the decision of the county court and rendered the correct decision. Cascio also maintains that Alfa failed to put on sufficient evidence of liability, noting specifically that Alfa failed to positively identify Cascio as the other party to the accident.

STANDARD OF REVIEW
¶ 11. We employ de novo review of a trial court's decision to grant a motion for directed verdict, and, as we conduct this de novo review, we view the evidence in the record in the same light as the trial court. Fulton v. Robinson Indus., Inc., 664 So.2d 170, 172 (Miss.1995).
¶ 12. The standard to be applied by the trial court in considering a motion for directed *178 verdict has been stated by this Court as follows:
The trial court may direct a verdict for the defendant at the close of the plaintiff's proof under authority of Mississippi Rule of Civil Procedure 50(a) if, in the opinion of the court, the plaintiff has failed to present credible evidence to establish the necessary elements of his right to recover. Hall v. Mississippi Chem. Express, Inc., 528 So.2d 796, 798 (Miss.1988). The court must consider all evidence then before it in the light most favorable to the plaintiff and must concede to the plaintiff all favorable inferences that could reasonably be said to arise from that evidence. Benjamin v. Hooper Electronic Supply Co., Inc., 568 So.2d 1182, 1187 (Miss.1990). Only if, viewed in that light, the court determines that the matter is so overwhelmingly in favor of the defendant that no reasonable juror could find for the plaintiff, should the court direct a defendant's verdict. Id.

Thomas v. Smith, 786 So.2d 418, 419 (¶ 2) (Miss.Ct.App.2001).
¶ 13. Our task then, in light of the applicable standard of review, is to examine the evidence in the record and make a determination as to whether Alfa presented credible evidence to establish the necessary elements of its right to recover, granting in its favor all reasonable inferences arising from the evidence presented. Id. This de novo standard of review for motions for directed verdict is so well-settled as to be beyond any question. See Lane v. Oustalet, 873 So.2d 92, 95(¶ 13) (Miss.2004); Ross v. National Forms and Systems Group, Inc., 882 So.2d 245, 249(¶ 11) (Miss.Ct.App.2004).

DISCUSSION
¶ 14. We find both of Alfa's arguments to have merit. First, it is quite clear that the circuit court applied an incorrect standard of review in considering Alfa's appeal from county court. In this regard, the circuit court declared:
This Court uses the same standard of review as defined by our Supreme Court in that `findings of fact made by the trial judge will not be overturned on appeal unless they are manifestly wrong, clearly erroneous, or contrary to the overwhelming weight of the evidence.' City of Jackson v. Perry, 764 So.2d 373, 376 (Miss.2000); Kight v. Sheppard Building Supply Inc., 537 So.2d 1355, 1359 (Miss.1989); Hardy v. First Nat'l Bank of Vicksburg, 505 So.2d 1021, 1023 (Miss.1987). . . . We will not set aside a trial court's findings unless they are manifestly wrong, clearly erroneous, or contrary to the overwhelming weight of the evidence. In said case, the trial judge's decision [to grant a directed verdict in favor of Cascio] was not against the overwhelming weight of the evidence.
As we noted above, the standard of review of motions for directed verdict is de novo, not clear/manifest error, and about this point there can be no doubt. Lane, 873 So.2d at 95 (¶ 13). Indeed, Cascio concedes that the circuit court applied the wrong standard of review. Thus, we find that the circuit court applied an incorrect standard of review, and that in and of itself could constitute reversible error.
¶ 15. We do note, however, that the circuit court's order also made the following statement, "In reviewing all the favorable inferences which benefit the Appellants, we find that liability had not been established and the directed verdict was properly granted." Cascio seizes upon this statement and argues that the circuit court, in spite of its own statements to the contrary, did in fact properly review the county court's decision.
*179 ¶ 16. The flaw in this argument is that the circuit court does not say in its order that it granted all favorable inferences, pursuant to the de novo standard of review; rather, it merely says it "reviewed all the favorable inferences." Then, in conclusion, the court said that its "review" showed no manifest or clear error. Because of this, we find Cascio's argument on this first point to lack merit. The circuit court's order declared that it reviewed the inferences favorable to Alfa in order to determine if there was any clear or manifest error. Thus, the circuit court, in spite of this reference to "reviewing favorable inferences," did not state nor apply the correct standard of review, and a failure to apply the correct standard of review can constitute reversible error. Raytheon Aerospace Support Services v. Miller, 861 So.2d 330, 335(¶ 9) (Miss.2003); Stewart v. Merchants Nat'l Bank, 700 So.2d 255, 259 (Miss.1997); Richards v. Harrah's Entertainment, Inc., 881 So.2d 329, 333(¶ 11) (Miss.Ct.App.2004).
¶ 17. Second, we find that Alfa is correct in its assertion that it presented uncontradicted evidence of liability that should have precluded a directed verdict in favor of Cascio, and, additionally, even if there were any deficiencies in Alfa's case, these deficiencies were caused in large part by the trial court's improper exclusion of evidence. On this second argument of Alfa's under this first issue, we will discuss two things: (a) the uncontradicted proof presented by Alfa and (b) the improper exclusions. We will discuss each of these points in turn.
¶ 18. First, based upon our review of the record, we find that Alfa managed to present uncontradicted proof of liability, even in spite of the fact that much of its evidence was ultimately excluded. An important argument made by Cascio in this regard is that, since neither of Alfa's witnesses actually spoke the name "Glenda Cascio," therefore, Alfa failed to prove that Cascio was the other party to the accident. At first glance, this argument appears to have some merit, because, upon reviewing the record, we find that neither of Alfa's witnesses actually spoke the name "Glenda Cascio." However, we find additionally that, while neither of Alfa's witnesses actually said the words "Glenda Casio," Cascio was nonetheless identified through testimony to be the other party to the accident. During the cross-examination of Patterson, the following exchange occurred:
Q. Belinda, as you heard me say earlier, I'm Bob Marshall, and I'm here for Glenda Cascio, the person that you've sued in this case. You were driving when the accident occurred?
A. Yes.
Q. And moving forward in traffic?
A. Yes.
Q. How do you know she was talking on the telephone?
A. Because as soon as sheI saw her coming and when she swerved, I saw hershe had her hand up to her face holding a phone.
Q. You were driving forward, looking in the rear view mirror at her instead of where you were going?
A. No, sir. Right-as soon as-well, I seen her. ...
(emphasis added).
¶ 19. As this exchange illustrates, counsel for Cascio actually identified her as the other party to the accident. After informing the witness that he represented "Glenda Cascio," he then asks how Patterson knew that "she" was talking on the telephone at the time of the accident. We are at a loss to know who this "she" might refer to other than Glenda Cascio, especially in light of the context given by Cascio's counsel; that is, he initiated this exchange *180 by declaring that he would be speaking about his client, Glenda Cascio. In light of this, we find that Glenda Cascio was, in fact, identified as the other party to the accident.
¶ 20. Ultimately, from our review of the record, it appears that Alfa's attorney was so discomfited by the exclusion of all of his documentary evidence that he actually forgot to ask his witnesses the simple question, "Who was the other party to the accident?" But, we find that Cascio her-self remedied this problem through the cross-examination of Patterson, because the "she" and "her" referred to in the exchange quoted above can refer to no other person but Glenda Cascio, given the context of the questioning. Therefore, we find that Cascio was identified as the other party to the accident and we further find that there was sufficient proof presented by Alfa, at the very least, to defeat a motion for directed verdict. Cascio would have had ample opportunity during her case-in-chief to rebut Alfa's evidence or to raise the defense that Cascio was, in fact, not the other party to the accident. While we have found that the proof presented by Alfa should have precluded a directed verdict, we feel compelled to discuss the trial court's evidentiary rulings, even though we already find there to be grounds for reversal at this point.
¶ 21. In this regard, the record shows that the trial court excluded virtually every piece of documentary evidence proffered by Alfa. Among the documents excluded were the Subrogation Agreement between Alfa and Patterson as well as the Agreement, Assignment and Release executed by Patterson in favor of Alfa. The trial court also excluded copies of checks demonstrating that Alfa had reimbursed Patterson for her expenses incurred due to the car accident. In addition, the trial court sustained virtually every objection to Alfa's evidence raised by Cascio, with only two or three exceptions.
¶ 22. While this is not necessarily remarkable in itself, our review of the record indicates that the trial court erred in making many of these rulings. For the sake of brevity, we will consider a representative example regarding the medical bills proffered by Alfa.
¶ 23. On one occasion, when Alfa was attempting to introduce these medical bills, the following exchange occurred:
A. I have injuries to my neck. I had cervical strain that was very painful; I could not hardly even move my neck for several months....
Q. And were you compensated by Alfa?
A. Yes.
Q. These documents that I handed you to look at and you testified these were your medical bills, you attended each and every visit that's reflected in these medical bills, didn't you?
A. Yes, I did.
Mr. Clinton: I'll move to introduce these [medical bills] into evidence, Your Honor.
Mr. Marshall: Yes, sir, and I object.... He's not complied with the statute and the rule concerning introduction of medical records, and even if he did so, he would have to have someone here to authenticate those medical records and to testify that the expenses ... were reasonable and necessary.
The Court: I'm going to sustain the objection with regard to I don't think the requirements of 41-9-119 have been met based on the testimony that's been presented....
Q. Do you know how much your medical bill was for Hattiesburg Radiology?
Mr. Marshall: I'm going to object to any further questions along these lines....
The Court: Sustained because the proper predicate has not been laid pursuant *181 to the evidence of reasonableness of medical expenses pursuant to Code Section 41-9-119.

¶ 24. As the quote demonstrates, the court declared that the medical bills were being excluded "because the proper predicate has not been laid pursuant to the evidence of reasonableness of medical expenses pursuant to Code Section 41-9-119." The problem with this ruling is that Mississippi Code Annotated § 41-9-119 does not require evidence of reasonableness of medical expenses before medical bills become admissible; rather, § 41-9-119 declares, "proof that medical, hospital, and doctor bills were paid or incurred because of any illness, disease, or injury shall be prima facie evidence that such bills so paid or incurred were necessary and reasonable." Thus, the trial court erred in excluding the medical bills under § 41-9-119, because that provision does not require proof of reasonableness as a condition precedent to admissibility.
¶ 25. One argument repeated by Cascio very often throughout the trial was that Alfa could not put on any evidence of the actual amount it paid to Patterson, because they were required to have all of the service providers (including all of the various doctors Patterson saw, representatives from the rental car company, representatives from the auto repair shop, and the like) present at the trial to testify to the reasonableness and necessity of the expenses. The trial court agreed with this argument and ruled consistently that Alfa had to lay some foundation or provide a proper predicate or properly authenticate the question of reasonableness and necessity of the amount paid. In other words, the trial court was requiring that Alfa prove the reasonableness of the amounts it paid to Patterson before it would allow into evidence documents or testimony bearing a monetary amount; and, further, the proof that the trial court insisted upon would require that all of the service providers (including the doctors, and the auto repair shop personnel) be present at the trial to testify to the reasonableness of their charges.
¶ 26. We believe that at one time this may have been a requirement in cases such as these; however, our current law has changed those requirements. For instance, as noted, Alfa did not have to have the doctors testify to the reasonableness and necessity of Patterson's medical expenses under § 41-9-119 before evidence of those expenses became admissible. In addition, as a separate matter, the trial court failed to recognize that the fact that Alfa paid Patterson roughly $16,000 is a separate question from whether that total amount (or the separate amounts adding up to that total) was reasonable. Indeed, the fact of the amount paid appears of logical necessity to precede the question of that amount's reasonableness, since a challenge to the reasonableness of the amount paid would look to the specific amount paid and argue that that specific amount was unreasonable or excessive. Thus, it appears that the trial court misapprehended some of the evidentiary requirements in making its rulings.
¶ 27. All of the foregoing is to say that, based upon our review of the record, we find that the granting of a directed verdict to Cascio was improper; therefore, we reverse that judgment and remand the case to the circuit court with instructions for it to remand the case to the county court for further proceedings consistent with this opinion.

II. WHETHER THE PRESENCE OF THE DEFENDANT AT THE TRIAL ON THE MERITS WAS REQUIRED IN THE ABSENCE OF A SUBPOENA OR COURT ORDER?
¶ 28. Alfa argues that because of Cascio's failure to personally appear, the trial *182 court should have granted it a default judgment or a judgment against the defendant, and that, in any event, Cascio's failure to appear rendered the proceedings unjust and unfair, in violation of its rights to due process. Cascio argues that there is no requirement that a civil defendant be physically present in the absence of a subpoena or court order, and that a party may appear, if she chooses, solely through her counsel.

STANDARD OF REVIEW
¶ 29. This issue has been addressed in our criminal law under Mississippi Code Annotated § 99-17-9 (Rev.2000), which provides for a criminal trial to proceed, given certain conditions, even if the defendant fails to appear or chooses not to appear. Also, in Simmons v. State, 746 So.2d 302 (Miss.1999), the issue of a criminal trial proceeding in the absence of the defendant is discussed at length. We will forgo any lengthy discussion of the Simmons case, as most of the salient features of that case are inapposite here. Suffice it to say that Simmons held, consistently with prior case law, that under certain circumstances (the discussion of which would take us too far afield in this particular civil case) a criminal trial may proceed in the absence of the defendant. Id.
¶ 30. In the civil realm, however, this issue appears to be one of first impression; that is, we have been unable to locate any authorities in our state specifically addressing this issue in the context of a civil trial. Virtually all of the civil cases we find deal with circumstances in which neither the party, nor the party's attorney appeared at the trial; whereas, in the case sub judice we are presented with a circumstance in which the party's attorney appeared (and actually desired the matter to proceed), but the party herself was absent. We could reason by analogy from § 99-17-9 and Simmons and find that if a criminal trial may proceed, given certain circumstances, in the absence of the defendant, then a civil trial may likewise proceed in the absence of the defendant. This reasoning could possibly be valid; however, the problem with reasoning from our criminal law in this instance is that, as the Simmons case demonstrates, the circumstances and conditions under which a criminal trial may proceed in the absence of the defendant are rather specific and have been developed and modified through several lines of cases. See Simmons, 746 So.2d 302; Sandoval v. State, 631 So.2d 159 (Miss.1994). Because of this, the only criminal law principle from which we could safely analogize is the basic principle that a trial may proceed in the absence of the defendant; yet, the conditions in the realm of criminal law under which that can happen do not appear to have any workable parallel in the realm of civil law.
¶ 31. Thus, we think it is appropriate, at this point, to look to the authority in other jurisdictions in making our decision on this issue. Byrd v. The Mississippi Bar, 826 So.2d 1249, 1252 (¶ 10) (Miss.2002).

DISCUSSION
¶ 32. A few other states have addressed this issue directly. In Chapman v. Avco Financial Services Leasing Co., 193 Ga. App. 147, 387 S.E.2d 391, 392 (1989), the Court of Appeals of Georgia held that a party may choose to absent herself and appear through her counsel only. In Hiltibrand v. Brown, 124 Colo. 52, 234 P.2d 618 (1951), the Colorado Supreme Court held that, while parties must be afforded the right to be present, a trial may proceed even though a party is not present. See also 75 Am.Jur.2d Trials § 226 (1991).
¶ 33. Thus, the law in other jurisdictions which have expressly considered *183 the issue holds that there is, indeed, no requirement that a party be personally present at the trial, and, in addition, a party may choose to be present solely through counsel. We see no compelling reason, at this juncture, to reject the reasoning of these other courts; however, in light of the facts of the case sub judice, we point out that a party who chooses to absent herself from her trial does so at the peril of her case-in-chief, especially where, as in this case, the voluntarily absent party is the single party defendant and the only witness slated to be called in her own defense.
¶ 34. In light of this, we find that the trial court did not err in denying Alfa's motion for a default judgment based upon Cascio's failure to appear. However, we note again that this question appears to us to be one which our supreme court has not explicitly considered.

III. WHETHER THE TRIAL COURT ERRED IN DENYING THE PLAINTIFF'S MOTION FOR DIRECTED VERDICT?
¶ 35. Alfa argues that, since Cascio was not present, and since there were no other defense witnesses present, all of Alfa's evidence and testimony was uncontradicted and un-rebutted. Because of this, Alfa argues that if anyone should have been granted a directed verdict on the issue of liability, it was Alfa, not Cascio. Cascio argues that Alfa failed to put on any evidence of liability, specifically repeating the fact that neither of Alfa's witnesses actually spoke the name "Glenda Cascio" as the other person who was involved in the car accident.

STANDARD OF REVIEW
¶ 36. As noted above, our standard of review of challenges to a ruling on a motion for directed verdict is de novo. Gibson v. Wright, 870 So.2d 1250, 1254-55 (¶ 9) (Miss.Ct.App.2004); Smith, 786 So.2d at 419 (¶ 2).

DISCUSSION
¶ 37. From our review of the record, we find that at least the following evidence was put on by Alfa: testimony of Patterson to the effect that she was rear-ended by the other party named in the suit; the picture of Patterson's car demonstrating damage to the vehicle consistent with having been rear ended; testimony of Brock, a long-time Alfa claims adjuster, to the effect that Alfa reimbursed Patterson for vehicle damage and medical expenses incurred in this accident, the other party to which was the named defendant in the suit; and testimony by Patterson in response to questions on cross-examination that dealt expressly with Glenda Cascio.
¶ 38. There was no evidence put on by Cascio. In light of this, all of the evidence adduced by Alfa stands as uncontradicted; therefore, we find that if a directed verdict on the issue of liability was warranted in this case, then the directed verdict should have been rendered in favor of the party who put on uncontradicted and un-rebutted evidence.
¶ 39. However, we are not convinced that a directed verdict was proper in favor of Alfa. As we noted above, we do find that Alfa established a prima facie case of liability, such that Cascio was not entitled to a directed verdict against Alfa; yet, we believe that Cascio should have the chance to rebut the evidence presented by Alfa.
¶ 40. Therefore, we affirm the trial court's judgment denying Alfa's motion for directed verdict against Cascio.
¶ 41. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY IS AFFIRMED IN PART AND REVERSED AND REMANDED IN PART. ALL COSTS OF THIS APPEAL *184 ARE TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.
KING, C.J., LEE, P.J., CHANDLER, BARNES AND ISHEE, JJ., CONCUR. BRIDGES, P.J., CONCURS IN PART AND DISSENTS IN PART. IRVING, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION JOINED BY BRIDGES, P.J.
IRVING, J., Concurring in Part and Dissenting in Part.
¶ 42. I agree with the majority that, via the cross-examination of Belinda Patterson, Glenda Cascio was sufficiently identified as the other party who struck Patterson's car from the rear, causing the injuries and damages for which suit was brought by Alfa as subrogee of Patterson against Cascio. I also agree with the majority that the trial court erred in excluding evidence of Patterson's medical damages. I further agree with the majority that Alfa presented a prima facie case of liability against Cascio.
¶ 43. However, since Alfa presented a prima facie case that Cascio was at fault in causing the accident and Cascio failed to present any evidence to rebut the prima facie case, I believe that Alfa was entitled to a directed verdict as to liability. Therefore, I respectfully dissent. I would reverse and remand the case for further proceedings on the issue of damages only.
BRIDGES, P.J., AND GRIFFIS, J., JOIN THIS SEPARATE WRITTEN OPINION.