CARLTON, J.,
dissenting:
¶ 12. I respectfully dissent from the majority’s opinion. I would affirm the circuit court’s directed verdict in favor of Dr. Beth Stinnett, and I submit that the circuit court correctly found that Bennie Braswell Jr.’s proffered expert’s opinion lacked sufficient basis to establish his prima facie case or meet his burden of production herein. I submit this Court should affirm the circuit court’s judgment since the record reflects no testimony regarding any applicable objective standard of care, nor does the record reflect any testimony as to breach by Dr. Stinnett of an objective standard of care to a “reasonable degree of medical certainty.” Williams v. State, 35 So.3d 480, 486 (¶ 19) (Miss.2010); see also Alfa Mut. Ins. Co. v. Cascio, 909 So.2d 174, 177-78 (¶¶ 11-12) (Miss.Ct.App.2005) (Appellate courts apply a de novo standard for reviewing a circuit court’s decision to grant a motion for directed verdict; circuit court “must consider all evidence then before it in the light most favorable to the plaintiff and must concede to the plaintiff all favorable inferences that could reasonably be said to arise from that evidence.”).
¶ 13. I find helpful guidance provided by Justice Randolph, writing for the Mississippi Supreme Court in Estate of Northrop v. Hutto, 9 So.3d 381, 387 (¶¶ 13-14) (Miss.2009), addressing the requirements of a prima facie case in medical-malpractice cases. In Northrop, the supreme court found that the Mississippi Court of Appeals had erred in finding that summary judgment should not have been granted in that case, and the supreme court further found that this Court’s opinion conflicted with its own precedent, as well as that of the supreme court, in misapplying the plaintiffs burden of production in that civil case. Id. at 382 (¶2). The supreme court explained that this Court’s error in that case occurred in its finding that the plaintiff, as non-movant, should benefit when doubt exists as to whether a fact is at issue. Id. The supreme court then explained that the first bridge that must be crossed is establishing duty, which is a legal question, and that if the plaintiff fails to establish an objectively determined standard of care and attendant breach by competent medical testimony, then summary judgment is appropriate. Id.
¶ 14. The case before us presents a legal question pertaining to the requirements of a prima facie case of medical malpractice. The case before us now, however, addresses the circuit court’s grant of a directed verdict against the plaintiff. The comment to Mississippi Rule of Civil Procedure 50(a) instructively states that “[i]n ruling on a motion for a directed verdict, the court should proceed along the same guidelines and standards that have governed prior peremptory in *183 structions and directed verdict practice in Mississippi[.]” Additionally, “the court should look solely to the testimony on behalf of the opposing party and if such testimony, along with all reasonable inferences which can be drawn therefrom, could support a verdict for that party, the case should not be taken from the jury.” Id. See White v. Thomason, 310 So.2d 914, 916-17 (Miss.1975); Ezell v. Metro. Ins. Co., 228 So.2d 890, 891 (Miss.1969). In the case before us, Braswell failed to establish a prima facie case of medical malpractice; therefore, the circuit court properly granted directed verdict herein.[1]
¶ 15. As the circuit court noted, the record reflects that no testimony was provided establishing the following: the standard of care existing in 2004; whether the standard of care was breached to a reasonable degree of medical certainty or probability; or whether Dr. Martin Turk actually knew what objective standard of care existed in 2004 applicable to the procedure in this case. The record shows the circuit judge allowed Dr. Turk, Braswell’s proffered expert, the opportunity to testify to provide an expert opinion, even though Dr. Turk failed to possess a licence to practice in 2004 and even though Dr. Turk had not engaged in any actual practice of dentistry or dental-related surgery in years. After being given this opportunity by the circuit court, Dr. Turk failed to provide an opinion sufficient to meet the requirements of Mississippi Rule of Evidence 702. Upon review, I am reminded that Rule 702 allows expert opinion testimony if the testimony is based upon sufficient facts or data; if the testimony is the product of reliable principles and methods; and if the witness has applied the principles and methods reliably to the facts of the case. The comment to Rule 702 acknowledges, as does precedent, that the trial judge is the gatekeeper in determining whether expert testimony is relevant and reliable.

Trial Court Proceedings

¶ 16. The defense asserted this motion for a directed verdict at the close of the plaintiffs case and argued that Braswell had failed to meet his burden to prove professional negligence on the part of Dr. Stinnett. In asserting this motion, the defense successfully submitted to the circuit court that the evidence lacked testimony regarding standard of care, and that certainly no testimony was provided as to the standard of care as to any reasonable degree of medical certainty or probability.[2] In arguing the motion, the defense stated that the circuit judge denied the defense motions to strike Dr. Turk’s testimony and defense motions objecting to Dr. Turk qualifying as an expert.
¶ 17. The record shows that the circuit judge considered the following matters in granting the defense’s motion for a directed verdict:
The plaintiff must prove, number one, what the standard of care was in Holly Springs, Mississippi!;,] on December 13, 2004. They must prove from their expert why that expert says that the standard of care has been breached.
What his education, what his experience is, and qualify him, the Court qualified him as an expert to testify; but that doesn’t mean that he was automatically accepted as an expert to know what the *184 standard of care was on December 13, 2004[,] when this occurred.
I listened intently to the testimony. And I expected it to be asked of the expert: Doctor, do you have an opinion based upon your training, expertise, and knowledge as to whether or not the standard of care was breached to a degree of medical certainty or probability?
Now, he says in his opinion — I believe he used the word negligent; but the only testimony we have really that’s before this Court was the testimony of Dr. Meekins; and he said that she had not breached the standard of care in his opinion.
Now, these are, you can call them magic words or whatever you want to call them; but the jury just does not have the guidance from the testimony in order to decide this case; and we have no testimony as to what the standard of care was at the time.
We don’t know whether he knew what the standard of care was at that time. We can assume that he did, but we’re not to assume. We don’t know what this was based upon. We don’t know what his understanding of the standard of care was and how he reached that opinion, and we don’t know whether he is of the opinion that Dr. Stinnett breached the standard of care to a reasonable degree of medical certainty or probability.
And I want everybody to have their day in court, but I have no other choice but to sustain the motion for a directed verdict.
[[Image here]]
Ladies and gentlemen, the plaintiff has put into evidence all the testimony and the evidence that they intend to place before you. It’s what we call a case-in-chief. In order to recover the plaintiff must prove certain things in order for you to be in a position to decide the case.
Number one, they must prove by expert testimony what the standard of care is in Holly Springs, Mississippi!,] on December 13, 2004. They must prove that by a minimally qualified expei’t who knows the standard of care on December 13, 2004. Now, Dr. Turk may know that; but he wasn’t asked it; so you don’t know it; and I don’t know it.
They must qualify that expert with testimony that he has the training, the knowledge, and the expertise to testify. Dr. Turk apparently has that, but no one asked him if he knew what the standard of care was, the standard of care for a minimally qualified dentist in Holly Springs, Mississippi!,] on December [13], 2004.
They must ask the expert if he understands the standard of care and what he bases his knowledge upon and whether or not in his opinion the defendant, Dr. Stinnett, had breached the standard of care based upon [a] reasonable degree of medical probability; and that was not asked [of] him.
It’s a difficult theory, but it’s rules that we have to follow, and for that reason I have no other choice but to dismiss the case because the plaintiff is through with their testimony. The defendant has asked that the case be dismissed, and I don’t have any other choice but [to] do it. It’s a chore that I don’t enjoy, but I must follow the rules.
¶ 18. I concur with the circuit judge’s conclusions that: Braswell failed to establish his prima facie case; Dr. Turk’s testimony failed to show an objective standard of care existing in 2004 applicable to this case; and Dr. Turk’s testimony failed to show he possessed qualifications to render an expert opinion as to the standard of care in the area of oral and maxillofacial *185 surgery existing in 2004 or breach of that applicable standard of care to any reasonable degree of medical certainty or probability. See McDonald, 8 So.3d at 182. The circuit court explained that he allowed Dr. Turk to qualified as an expert. However, the circuit judge further explained that this failed to mean that Dr. Turk was automatically accepted by the court as an expert qualified to testify as to the applicable standard of care on December 18, 2004. The circuit judge explained that he listened intently to the testimony. The circuit court also expected Dr. Turk to be questioned during his testimony regarding what standard of care existed and whether, based upon his training, expertise, and knowledge, whether or not the standard of care was breached to a degree of medical certainty or probability. Braswell bore the burden of production to establish his prima facie case, and he failed to meet this burden.
¶ 19. Clearly, in granting the motion for a directed verdict, the circuit court found that Dr. Turk had failed to provide the testimony necessary to establish a prima facie case of breach of the standard of care applicable to the procedure in this case. Recognizing that Dr. Turk’s expert opinion testimony lacked a sufficient basis, the circuit judge correctly acknowledged that the record failed to reflect whether Dr. Turk even knew the standard of care in 2004, and the circuit court acknowledged that the court was not supposed to assume such evidentiary matter. The circuit judge correctly noted that the record failed to reflect what Dr. Turk’s opinion was based upon; what Dr. Turk’s understanding of the standard of care encompassed; or how Dr. Turk had reached that opinion. The circuit judge significantly noted that the record failed to reflect whether Dr. Turk possessed the opinion that Dr. Stinnett had breached the standard of care to a reasonable degree of medical certainty or probability.
¶ 20. Turning to precedent again for guidance, the supreme court in Bickham v. Grant, 861 So.2d 299, 303 (¶ 14) (Miss. 2003), determined that the appropriate standard of care in a medical-malpractice case is objective, and it centers around exercising the degree of care, diligence, and skill ordinarily possessed and exercised by a minimally competent and reasonably diligent, skillful, careful, and prudent physician in that field of practice. The Bickham court explained that what the physician may have been thinking in his judgment is irrelevant, but that what the physician did in treating the patient constituted the key factor. Id.; see also Northrop, 9 So.3d at 387 (¶ 13) (Supreme court held that an expert’s personal preference fails to establish the national standard of care required to establish an objective standard of care to make a prima facie case of medical malpractice.). In the case before us, the record reflects that the circuit judge gave Braswell ample opportunity to establish his prima facie case through Dr. Turk, his proffered expert, but Dr. Turk failed to provide a sufficient basis for his opinion and failed to provide an opinion as to applicable standard of care. Thus, Braswell failed to meet his burden with sufficient evidence.

Dr. Turk’s Expert Qualifícations

¶ 21. At trial, Dr. Turk described himself as an oral and maxillofacial surgeon. However, Dr. Turk’s testimony reflects that he lacks board certification in oral or maxillofacial surgery, because as he explained, he never took the board exam. He also testified that he no longer belonged to any professional organizations or associations because the dues were too expensive. Dr. Turk explained that he practiced in New Jersey for thirty-six years in private practice and then moved *186 to the University of Alabama, where he served as the director of the oral surgery clinic[3]; and in 2008, he was given a year-to-year contract to serve as an associate professor. He admitted on cross-examination that he possessed no license to practice in Alabama, and he never had been licensed in Alabama. Dr. Turk testified that he was never on the clinical practice staff at the university. He also admitted to being fired for engaging in an affair with a student while he was a staff member. Dr. Turk further testified that he was no longer on faculty at the University of Alabama, and he had not been on staff there since 2006.
¶ 22. The record reflects that both the circuit judge and counsel for Braswell[4] showed surprise at the revelation that this proffered expert possessed no current medical license. The record shows that Dr. Turk possessed no license in Alabama,[5] or anywhere else, to practice medicine in the field in which he was offered as an expert, or any other field of medicine. In addressing this unexpected discovery of a lack of a license by the plaintiffs expert, during voir dire of this proffered expert, the circuit court called a recess and allowed Braswell’s counsel to research the issue of competency of the unlicensed expert.[6] The circuit court gave the counsel permission to later recall this witness, and the court allowed the Braswell to proceed with the testimony of Dr. Ligón, an oral maxillofacial surgeon. Upon completion of Dr. Ligon’s testimony, the circuit court then recalled Dr. Turk to the stand. Without revisiting the issue of Dr. Turk’s qualifications and without imposing a requirement on Dr. Turk to possess a license to practice, the circuit court accepted him as an expert and allowed Braswell to attempt to establish a sufficient expert opinion through his testimony. However, Dr. Turk’s testimony failed to assist Braswell in establishing a prima facie case of medical malpractice by failing to establish that: Dr. Turk knew the objective standard of care that existed in 2004; Dr. Turk knew what objective standard of care applied in this particular case; and whether any breach of the standard of care occurred to a reasonable degree of medical certainty or probability. Northrop, 9 So.3d at 384-86 (¶¶ 9-10) (establishing a prima facie case of medical malpractice requires a medical expert to articulate the applicable, objective national standard of care and to testify as to the physician’s duty to conform to that applicable standard of care).[7]
¶ 23. Here, the record fails to show sufficient knowledge, skill, or experience sufficient to qualify Dr. Turk as an expert in the field of oral and maxillofacial surgery, much less to testify as to the stan *187 dard of care in that area of practice.[8] However, he was able to shed much light on how to generate expert witness fees[9] without a license, board certification, or job in the area of expertise. The record shows Dr. Turk was convicted of a felony in New Jersey in 2006, and that sometime before his conviction, he had practiced dentistry in New Jersey. The record fails to establish his knowledge of the standard of care applicable in this case much less the scope of his practice[10] in New Jersey. The Insufficiency of the Expert Opinion
¶ 24. In reviewing the opinion provided by Dr. Turk during his testimony at trial, Dr. Turk specifically clarified that he was providing an opinion as to numbness in the right mid-face, and he interestingly clarified to the jury that he was not providing any testimony about infection.[11] Dr. Turk testified that the only way to cause such injury would be a traumatic episode to the nerve trunk. Dr. Turk testified that if Dr. Stinnett became disoriented or failed to pay attention when injecting the patient with an anesthetic, then the injection could go too far into the cavity, resulting in nerve injury. He testified that injections given when anesthetizing the patient caused the episode herein despite the lack of evidence of any disorientation or lack of attention by Dr. Stinnett, and despite Dr. Turk’s own testimony that the nerve injured was located in a different area than where anesthetic injections were given. Dr. Turk’s testimony differed from the his opinion disclosed prior to trial, and the defense raised an issue of inappropriate witness contact between Dr. Turk and Braswell’s counsel during Dr. Turk’s testimony.
¶ 25. The circuit judge met with counsel in chambers to address the reported inappropriate contact between Braswell’s counsel and Dr. Turk occurring during a pri *188 vate, closed-door conversations between Dr. Turk and Braswell’s counsel during the court’s recess. More specifically, the inappropriate conversation occurred during a recess after Dr. Turk after he had been tendered as a witness and subject to cross-examination. The circuit court reconvened the next day without striking the testimony. The circuit court acknowledged that Braswell’s counsel seemed upset with her witness for his failure to disclose details as to his license, prior felony conviction, and past; and Braswell’s counsel indicated that the inappropriate conversation pertained to those matters and not Dr. Turk’s trial testimony.
¶ 26. Nonetheless, the defense sought to strike Dr. Turk’s testimony due to the inappropriate contact by Braswell’s counsel, since Dr. Turk had already been tendered as a witness subject to cross-examination. Showing indulgence, the circuit court allowed Dr. Turk to continue to testify; and on cross-examination, Dr. Turk indeed admitted that his current opinion given in court as to how the injury occurred differed from the pretrial reports and pretrial opinions he had provided to the parties. He admitted that his pretrial reports and opinions only pertained to the nerve trauma as being caused by the needle passing through the infection then transporting it to an uninfected area. Dr. Turk admitted that he heard the expert testimony of another expert at trial, Dr. Ligón, who testified that infection was not the primary cause of the numbness of Braswell; rather, the infection in Dr. Li-gon’s opinion constituted a differential diagnosis. However, Dr. Turk denied that the expert testimony of Dr. Ligón motivated him to change his own opinion at trial that the numbness was caused by an improperly given injection instead his previous opinion that the injury was caused by an injection passing through an infected area spreading the infection to another area.
¶ 27. The pretrial opinion by Dr. Turk stated that Braswell displayed signs and symptoms of sensitivity during the procedure. Dr. Turk stated that this sensitively shown by Braswell during the procedure showed that Braswell possessed an infection prior to the treatment by Dr. Stinnett. The pretrial report of Dr. Turk explained that Lidocaine does not work on infected tissue; hence, Braswell suffered sensitivity during the procedure.
¶ 28. Dr. Turk testified that he believed Dr. Stinnett used a standard technique to anesthetize Braswell’s teeth, and Dr. Turk described an injection a couple of millimeters, no more than a quarter of an inch, above the root end of the tooth. During his trial testimony, Dr. Turk admitted that the nerve that he claimed was traumatized by injections, the infraorbital foramen, is found in a different location from the site above the gums where injections are administered to anesthetize a patient. He described the procedure in court for anesthetizing a tooth that depicted the differing locations.
¶ 29. During his testimony, Dr. Turk also admitted that he did not know where Dr. Stinnett had placed the injections that she gave Braswell during the procedure, and the record shows that there was no testimony of Dr. Stinnett’s disorientation or lack of attention during the injections. Dr. Turk further admitted that in his opinion, this case involves maxillary anesthesia. However, he admitted that maxillary anesthesia was not the subject of the video listed on his CV that he had provided to defense counsel. He admitted that the video described an infraorbital nerve block that involves using a different injection technique than anesthesia.
¶ BO. The record reflects that Dr. Turk set forth for the first time at trial a new alleged “expert” opinion, over defense objection. The new opinion provided at trial *189 by Dr. Turk provided that the injury that Braswell had suffered was caused by a mechanical injury by Dr. Stinnett whereby the injury resulted from some unknown alleged negligence in lack of balance or lack of attention while Dr. Stinnett injected Braswell. The record contains no factual basis to support this opinion by Dr. Turk, including the pretrial disclosures of Dr. Turk’s opinion, which contradicts his trial testimony. In his pretrial disclosures, Dr. Turk opined that the injuries resulted from a needle passing through infection and carrying infection to another area causing the injuries at issue. The circuit court denied the defense’s request to offer an expert[12] to rebut the new theory provided at trial by Dr. Turk, which had not been previously disclosed. Regardless of the court’s indulgence in allowing Bras-well great leniency in attempting to elicit a sufficient expert opinion out of this witness, this new opinion asserted at trial by Dr. Turk failed to establish a prima facie case of medical malpractice.[13]
¶ 31. In conclusion, the record herein contains no showing that Dr. Turk possessed knowledge of the applicable standard of care or that even without a license, Dr. Turk possessed sufficient specialized knowledge, skill, experience, training, or education to testify as an expert in the field of oral and maxillary surgery in this case. See M.R.E. 702. I therefore would affirm the circuit court’s directed verdict in favor of Dr. Stinnett.
BARNES, J., JOINS THIS OPINION.

. In Barton v. Estate of Buckley, 867 So.2d 271, 274 (¶ 10) (Miss.Ct.App.2004), this Court upheld a grant of summary judgment where the plaintiff produced no evidence of the appropriate standard of care at the time of surgery.

. See McDonald v. Mem’l Hosp. at Gulfport, 8 So.3d 175, 182 (¶¶ 18-19) (Miss.2009) (competent expert testimony is required to establish a prima facie case of medical malpractice.).

. The testimony reflects that this position constituted a managerial position and not a clinical position, and Dr. Turk never practiced medicine in Alabama or possessed a medical license in Alabama.

. On cross-examination, Dr. Turk also admitted that when he provided his reports in this case in 2008, he was announced and disclosed as an associate professor at the University of Alabama, Birmingham, even though he was no longer on staff there.

. As previously stated, Dr. Turk never possessed a licence to practice in Alabama.

. On cross-examination, Dr. Turk admitted that he had not edited, produced, or created in any way, a video listed on his curriculum vitae identifying him as "served editor.” Moreover, he did not personally know the experts who actually produced the video listed on his CV.

.The circuit judge possess great discretion in the mode and order of interrogation of witnesses and presentation. See M.R.E. 611(a) (Court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) ascertain the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.).

.On cross-examination, Dr. Turk also admitted that he never possessed a license to practice medicine in Alabama and did not want to be a part of the faculty practice, even though the address on his out-dated CV reflected the address of the Oral and Maxillofacial Department at the University of Alabama, Birmingham. Dr. Turk admitted that he had no current CV and that the CV he had provided to counsel was incorrect as to his current qualifications. The defense also informed the court that Dr. Turk had been convicted of a felony in New Jersey in 2006, and Braswell's counsel denied any knowledge of the conviction. Counsel for the defense also elicited Dr. Turk’s admission that he indeed had been convicted of such felony. He also admitted that he had been fired from the University of Alabama, Birmingham because he engaged in an affair with a student while married to another woman. He testified that he is now married to that student. On redirect, he explained that he had previously surrendered his license to New Jersey before moving to Alabama and he testified that he had failed to disclose to plaintiff’s counsel his lack of licen-sure. Dr. Turk admitted that he could not even examine Braswell, because he possessed no license to practice, and an examination would constitute practicing medicine without a license, in violation of the law.

. On cross-examination, Dr. Turk admitted to charging fees by the minute and hiring someone to market his expert witness skills, even though he possessed no license and no practice. I note that he admitted in his direct testimony that he never possessed a board certification in the area of oral and maxillofa-cial surgery.

. Testimony as to scope of practice should include information such as how many patients Dr. Turk served or information as to how many patients in his prior practice required dental procedures involving oral or maxillofacial surgery. In short, the testimony should display his knowledge and experience providing the basis for his expert opinion. See M.R.E. 702. I submit that the testimony in this case fails to establish such a basis.

. The opinion disclosed prior to trial asserted that the damage to Braswell occurred due to a needle passing through an infected area and spreading the infection to the damaged area.

. The defense made a proffer that an expert, Dr. Williams, would testify that based upon reasonable probabilities, the needle-stick injury occurred in this case, thereby injuring the nerve or a vessel, which bled and caused the scar tissue, and that such injury is not evidence of medical malpractice.

. M.R.E. 702.